ENTERED JAN 1 5 2015

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-14-18
MMM-Cuum-12-15-14

MARY ADAMS, *et al.*,

Plaintiffs,

v.

MAINE MUNINCIPAL ASSOCIATION,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON PARTIES' CROSS-
MOTIONS FOR SUMMARY
JUDGMENT

## I. INTRODUCTION

Before the court are cross-motions for summary judgment on Counts V and VI of the Plaintiffs' First Amended Complaint ("Amended Complaint"). Plaintiffs, Mary Adams, John H. Wibby, Jr., Pembroke Schaffer ("Individual Plaintiffs") and Cyr Plantation (collectively "Plaintiffs") allege that there are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law. Count V alleges the Defendant's contribution to and participation in Political Action Committees ("PACs") constitutes the illegal expenditure of public money for partisan political purposes in the absence of statutory authority. (Pls.' Compl. ¶ 24.) Count VI is asserted by MMA municipal member, Cyr Plantation, and alleges that the Defendant's partisan and political activities are *ultra vires* and violate clear restrictions in its corporate charter. As to both Counts, Plaintiffs seek relief in the form of a permanent injunction.

## 1. STIPULATED FACTS

The parties have stipulated to the facts. Below is a brief summary of the action before the court.

### a. *MMA as an Entity in the State of Maine*

Defendant, Maine Municipal Association ("MMA") is a non-profit, non-partisan organization formed in 1936 as an unincorporated association to advance the collective interests of Maine's local governments. (Joint Stip., ¶¶ 1, 4.) MMA was incorporated in 1952 pursuant to what was then Chapter 50 of the Maine Revised Statutes, entitled "Corporations Without Capital Stock." (Joint Stip., ¶ 2.) While MMA is organized as a "private corporation without stock," as an instrumentality, MMA uses local government tax exemptions and government accounting standards, participates in the Maine Public Employees Retirement System, and is subject to some aspects of the Maine Freedom of Access Act, 1 M.R.S §§ 401-521.

MMA is a voluntary membership organization, with varying membership levels for: (1) municipalities and other local governments; (2) counties and quasi-municipal corporations; (3) municipal associations and professional organizations; and (4) individuals, students, professionals, and businesses. *Id.* While MMA membership is voluntary, from 2002-2009, nearly 100% of Maine municipalities were members. (Joint Stip., ¶ 7.) MMA provides educational, informational, and professional services to municipal members including training, manuals, online resources, publications, legal resources etc. (Joint Stip., ¶ 2.) MMA derives its revenue from dues, sales of publications, exhibitors at annual conventions, contract services, and other fee-based services and programs. (Joint Stip., ¶ 6.)

2

The MMA has adopted a local government tax exemption pursuant to 26 U.S.C Section 115, and all of its income, regardless of source, is excluded from gross income. Thus, the MMA pays no taxes. (Joint Stip., ¶ 8.) The MMA maintains a "general fund" into which most revenue is deposited with transfers to "designated funds" being made at the discretion of the Executive Committee. (Joint Stip., ¶ 6.)

b.    *MMA as an Advocate for Maine's Municipalities*

MMA is an advocate in support of or against proposed legislation that affects Maine Municipalities. (Joint Stip., ¶ 14.) The MMA maintains a 70-member Legislative Policy Committee (the "LPC") from each of Maine's state senate districts to provide legislative analysis and to determine the MMA's position on legislation of all types.[1] (Joint Stip., ¶ 4.) The LPC analyzes proposed legislation and ballot measures affecting municipal governments.[2] *Id.* MMA further maintains a Legislative Initiative Fund ("LIF"), which is funded at the Executive Committee's discretion by allocations from MMA's general fund.

c.    *The Plaintiffs*

The Plaintiffs to this action are residents of and property tax payers in the towns of Garland, Gray, and Brunswick, Maine. All of which are MMA municipal members. (Joint Stip., ¶ 7.) In addition to membership dues, each town also purchases insurance products from MMA. *Id.* Individual plaintiffs promoted the below-mentioned Citizens Initiatives. However, in part because of MMA's opposition, voters ultimately rejected the Initiatives. The individual

---

[1] The LPC analyzes proposed legislation and ballot measures affecting municipal governments and recommends whether the MMA should support or oppose the legislation.

[2] MMA's advocacy efforts are guided by the municipal officials who are elected to the LPC. The LPC was created to inform MMA's understanding of the position of Maine's municipalities with respect to proposed legislation and ballot measures.

3

Plaintiffs' tax monies are alleged to have gone to MMA both through the dues paid by the towns, and through premiums paid on the insurance procured by the towns. *Id.* Each Plaintiff is a registered voter who voted in each of the disputed Initiatives discussed below. Further, all three individual Plaintiffs were signatories to the "Maine Taxpayer Bill of Rights" Initiative which was presented on a statewide ballot in 2006. MMA opposed this Initiative.

Plaintiff Cyr Plantation is a Maine plantation and an MMA member. Beginning in 2005, Cyr Plantation complained to MMA about its lobbying activities that affected the Plantation.

### d. *The Initiatives*

Between 2003 and 2009, MMA advocated against five (5) Citizen Initiatives arising under Article IV, Part Third, Section 18 of the Maine Constitution. (Pls.' Stip. Fact, ¶ 16.) MMA coordinated with other interest groups in organizing or managing the PACs and the campaign to support or oppose. MMA also provided staff support, including personnel in leadership roles. These Initiatives included: (1) the School Finance and Tax Reform Act of 2003 ("55% School Funding Initiative); (2) An Act to Impose Limits on Real and Personal Property Taxes in 2004 ("Palesky Initiative"); (3) An Act to Create a Maine Taxpayer Bill of Rights in 2006 ("TABOR I"); (4) An Act to Provide Tax Relief in 2009 ("TABOR II"); and (5) An Act to Decrease the Automobile Excise Tax and Promote Energy Efficiency in 2009 (the "Excise Tax Initiative"). (Def.'s Stip. Fact, ¶ 30.) Each of the Initiatives was related to municipal issues including taxing and spending. In the case of each of the above-mentioned Initiatives, the Committee determined that the MMA should take a position. (Def.'s Stip. Fact, ¶¶ 32, 38, 48, 58, 60.)

4

## II. STANDARD OF REVIEW

In a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact. *Rogers v. Jackson,* 2002 ME 140, ¶ 5, 804 A.2d 379 (citations omitted). The court gives the party opposing summary judgment the benefit of any inferences that might reasonably be drawn from the facts presented. *Curtis v. Porter,* 2001 ME 158, ¶ 9, 784 A.2d 18. If the record reveals no genuine issue of material fact then summary judgment is proper. *Id.* at ¶ 6, 784 A.2d at 21.

A contested fact is "material" if it could potentially affect the outcome of the suit under the governing law. *Inkel v. Livingston,* 2005 ME 42, ¶ 4, 869 A.2d 745. A fact is "genuine" if there is sufficient evidence supporting the claimed fact to require a fact-finder to choose between competing versions of facts at trial. *Id.* For the purposes of summary judgment, factual disputes and ambiguities must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *See Rodrigue v. Rodrigue,* 1997 ME 99, ¶ 8, 694 A.2d 924; *see also Stanton v. Univ. of Maine Sys.,* 2001 ME 96, ¶ 6, 773 A.2d 1045 ("To survive a . . . motion for summary judgment, a plaintiff must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law."). A defendant moving for summary judgment has the burden to assert those elements of the cause of action for which the defendant contends there is no genuine issue to be tried.

5

## III. DISCUSSION

### A. *Count V: MMA"s Expenditure of Public Funds*

#### i. *MMA Is a Public/Government Actor.*

Plaintiffs contend that MMA's contributions to and participation in PACs constitutes an illegal expenditure of public money for partisan political purposes in the absence of statutory authority. Defendant contends that this argument is unpersuasive for two reasons. First, MMA is not required to obtain statutory authority to spend its funds; and second, even if MMA was required to procure such authority, MMA is in fact statutorily authorized to engage in such advocacy.[3]

The Superior Court has held that "in the absence of clear and explicit legislative authorization, a public agency may not expend public funds to promote a partisan position in an election campaign. *Campaign for Sensible Transp. v. Me. Turnpike Auth.*, 1991 Me. Super. LEXIS 228 (Oct. 8, 1991). The Law Court has established a four-part test, "to determine if a particular entity or citizen, individually or collectively, as a result of activities relating to government, becomes 'an agency or public official for purposes of the law.'" The four factors are:

(1) Whether the entity is performing a governmental function;
(2) Whether the funding of the entity is governmental;
(3) The extent of governmental involvement or control; and
(4) Whether the entity was created by private or legislative action.

*Moore v. Abbott*, 2008 ME 100, ¶ 11, 952 A.2d 980. While this test was exclusively used by the Law Court to determined whether or not an entity or individual qualifies as "an agency or public

---

[3] "When agency expenditure or other action is challenged as lacking appropriate legislative authorization, agencies will frequently argue that the expenditure is implicitly authorized because it is a necessary incident to carrying out the agency's statutorily authorized functions." *Campaign for Sensible Transp. v. Me. Turnpike Auth.*, 1991 Me. Super. LEXIS 228 (Oct. 8, 1991).

6

official" for purposes of the Freedom of Access Act, this test is useful in this case to determine MMA's status.[4]

The Plaintiffs attempt to establish the "public character" of MMA by indicating its "statutory status as an instrumentality of municipal government, the public character of its funding, its government accounting conventions and tax exemption, its governance by municipal officers, and its status under FOAA." (Pls.' Mot. 3.) Further, the State of Maine recognizes the MMA as an instrumentality of it municipal and quasi-municipal corporations. 30-A M.R.S. § 5722(9).[5]

In this case, MMA, in addition to advocacy, provides educational and informational services as well as professional services to its members. Generally, "[a] person or entity, acting without statutory authority or state support, who provides nonbinding advice to a state agency or state official, even on a matter that may be of some significance, does not, by providing that nonbinding advice, become an agent of government performing a governmental function." *Moore*, 2008 ME 100, ¶ 15, 952 A.2d 980, 984.

However, MMA derives its revenue from membership dues. These membership dues are comprised of municipal funds and other administrative fees. (Joint Stip., ¶ 22.) Thus, MMA is indirectly funded through State funds. Further, MMA employees are eligible to participate in the

---

[4] Plaintiffs' indicate that MMA is subject to "some portions" of the freedom of Access Act (FOAA) and has had a formal FOAA policy since 2006. (Joint Stip., ¶ 10.)

[5] Advisory organizations.

> Obtain the services of municipal advisory organizations. The Legislature recognizes the Maine Municipal Association as a nonprofit advisory organization and declares it to be an instrumentality of its member municipal and quasi-municipal corporations with its assets upon its dissolution to be delivered to the Treasurer of State to be held in custody for the municipalities of the State. A municipal advisory organization may receive federal grants or contributions for its activities with respect to the solution of local problems. . . .

30-A M.R.S. § 5722(9).[5]

7

Maine Public Employees Retirement System. In the previous action in the District Court, Chief

Judge Woodcock expressly found:

> MMA's speech was effectively controlled by the government. . . . MMA is an
> association of municipalities in Maine. . . . Although MMA allows private citizens to join
> as "patrons," its internal governance structure gives municipal officials exclusive control
> over organizational decisions. MMA's Executive Committee, which controls and
> manages the Association and holds and manages all MMA property, is comprised
> exclusively of municipal members. Similarly, its Legislative Policy Committee, which
> determines its positions on legislation and citizen Initiatives, is comprised exclusively of
> municipal members.

Judge Woodcock went on to explain that in this case, there was no private involvement, and that

MMA's decisions were within the exclusive and complete control of municipal officials. *Adams*

*v. Me. Mun. Ass'n*, 2013 WL 9246553 (D. Me. 2013). Because the Court agrees with the

District Court's finding that the MMA is a governmental entity or actor, the court does not need

to address whether that finding constitutes the law of the case. [6]


### ii. *MMA Has Likely Acted within the Legislature's Intent By Providing Advocacy Services to Municipalities in the State of Maine.*

Notwithstanding the MMA's status as a government actor, the Plaintiffs have raised a

question as to whether the MMA is statutorily authorized to expend political funds and whether

MMA's expenditures were lawful. The MMA accurately contends that there is no source of

Maine law indicating that a grant of statutory authority is required before a governmental entity

may expend funds. Rather, the case law that the Plaintiffs rely on deals with obvious

governmental entities that have an overt statutory grant and the question presented in those cases

was whether the entity exceeded its grant. For example, in *Sensible Transportation*, there was a

question as to whether the Maine Turnpike Authority's advocacy efforts were authorized by its

---

[6] The "law of the case" rests on the policy "that in the interest of finality and intracourt comity a Superior Court Justice should not, in subsequent proceedings involving the same case, overrule or reconsider the decision of another Justice." *Grant v. City of Saco*, 436 A.2d 403, 405 (Me. 1981) (*quoting Blance v. Alley, Me.*, 404 A.2d 587 (1979).

8

enabling statute. Unlike the Maine Turnpike Authority, MMA has no arguable statutory limitations.

The Defendant contends that while a particular enabling statue does not govern the MMA, the Maine lobbyist disclosure statute recognizes that municipalities and quasi-municipal entities are "people" who may lobby.[7] Further, "Maine law expressly contemplates that municipalities and quasi-municipal entities may lobby or employ lobbyists to advocate their interests, which activity undoubtedly entails an expenditure of municipal funds for such purpose." (Def.'s Mot. 14.) The MMA reasons that because MMA is an "instrumentality" pursuant to 30-A M.R.S § 5722(9), municipalities are statutorily authorized to contribute money to MMA, which "in turn is statutorily authorized to expend funds to advocate and lobby." (Def.'s Mot. 15.) MMA also provides commentary from a 1977 opinion of then Attorney General Joseph E. Brennan who noted: "[30-A M.R.S § 5722(9)] does expressly authorize |municipal| contributions to municipal advisory organizations, naming therein the Maine Municipal Association. Contributions to such organizations could . . . be used for legitimate organization related purposes, including advocacy." (Def.'s Mot. 15.) Thus, the Court concludes that the MMA is a quasi-governmental entity with authority to advocate on behalf of Maine *municipalities*.

---

[7] The MMA cites 3 M.R.S.A § 312-A(12) which states:
> Person means an individual, corporation, proprietorship, joint stock company, business trust, syndicate, association, professional association, labor union, firm, partnership, club or other organization, whether profit or nonprofit *or any municipality* or *quasi-municipality* or group of person acting in concert, but does not include this State or any other agency of this State.

9

### iii. The Government Speech Doctrine Applies.

While MMA is not *per se* a government agency, it has a number of indicia of government and "more closely resembles government than a private party." *Adams v. Me. Mun. Ass'n*, 2013 WL 9246553, at *16 (D. Me. 2013). Because the court finds MMA to be a governmental or quasi-governmental entity, the government speech doctrine applies.

"The doctrine of government speech arises most often in the context of complaints that government speech expressing or promoting particular viewpoints violates the free speech rights of citizens with opposing views." *Mainers for Fair Bear Hunting v. Me. Dep't of Inland Fisheries & Wildlife*, 2014 Me. Super. LEXIS 117, at *11 (Me. Super. Ct. Oct. 22, 2014). In this case, the ultimate injury associated with the Plaintiffs state law claims is that by MMA expending public funds in opposition to certain initiatives, the plaintiffs' ability to deliver their message is hindered. This, by its very nature, is a constitutional claim sounding in free speech. *Id.* at 12.[8]

The government speech doctrine provides that government speech is "not restricted by the Free Speech Clause." *Adams v. Me. Mun. Ass'n*, 2013 WL 9246552, at *16 (D. Me. 2013) (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009)). "In other words, 'the Government's own speech is exempt from First Amendment scrutiny." *Mainers for Fair Bear Hunting*, 2014 Me. Super. Lexis 117, at *10 (citing *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005). "Whether the protections of the government speech doctrine are available . . . depends on the content of the challenged speech and the legal theory argued by the challenger." *Adams*, 2013 WL 9246553, at *19.

---

[8] This similar reasoning was used in *Mainers for Fair Bear Hunting*. In that case Justice Wheeler determined that notwithstanding the fact that the plaintiffs stated their claims were not constitutional, the substance of the arguments sounded in free speech.

10

It has long been held that when governments "engage[] in their own expressive conduct, . . . the Free Speech Clause has no application." *Mainers for Fair Bear Hunting*, 2014 Me. Super. LEXIS 117, at *12 (citing *Pleasant Grove City*, 555 U.S. at 467). A governmental entity "is entitled to say what it wishes." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833 (2995). Further, the government may choose "viewpoints when the government itself is speaking. *Griswold v. Driscoll*, 616 F.3d 53, 58-59 (1st Cir. 2012) (citing *Pleasant Grove City*, 555 U.S. at 467). Moreover:

> Compelled support of government — even those programs of government one does not approve — is of course perfectly constitutional, as every taxpayer must attest. And some governmental programs involve, or entirely consist of, advocating a position. The government, as a general rule, may support valid programs and policies by taxes or other exactions binding on protesting parties. Within this broader principle it seems inevitable that funds raised by the government will be spent for speech and other expression to advocate and defend its own policies.

*Johanns*, 544 U.S. at 559 (internal quotation marks omitted). "Thus, the governmental speech doctrine allows governmental entities to expend funds on position-based speech." *Mainers for Fair Bear Hunting*, 2014 Me. Super. LEXIS 117, at *12.

Government accountability protects those who disagree with government action, speech, and expenditures.[9] In this case, MMA is ultimately accountable to the electorate as citizens have the opportunity to:

> [R]un their own slate of candidates, who—if elected—would then be empowered to change municipal policy. Alternatively, they may petition their municipalities to take a different stance—whether by asserting themselves within MMA's internal governance structures or by withdrawing from MMA. [Further] they may petition the Maine Legislature to pass a law or to propose a constitutional amendment limiting MMA's ability to fund and participate in PACs.

---

[9] "When the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position." *Bd of Regents of Univ. of Wis, Sys.*, 529 U.S. 217, 235 (2000).

11

*Adams v. Me. Mun. Ass'n*, 2013 WL 9246553 (D. Me. Feb. 14, 2013). Further, individual Plaintiffs could petition their respective municipalities to withdraw its MMA membership and thereby cease any contribution of funds to MMA's activities. Thus, the court grants Defendant MMA's Motion for Summary Judgment as to Count V.

## B. *Count VI: Ultra Vires*

Plaintiff, Cyr Plantation, seeks a determination that MMA's partisan and political activities exceed the purposes expressed in the MMA's 1953 Certificate of Organization and are therefore *ultra vires*. As a result of these acts, Cyr Plantation seeks permanent injunctive relief to compel MMA to conform to its corporate charter.

In Maine, it is well-settled law that "[t]he purpose of a non-profit corporation is the object for which the corporation is formed; the aim, intention or plan which it is meant to effectuate. It is that which the incorporators set before them to accomplish; it is the raison d'etre." *Good Will Home Ass'n v. Erwin*, 266 A.2d 218, 221 (Me. 1970). Further,

[t]he corporate purposes . . . serve to inform the public as to the nature of organization for the benefit of those with whom it deals. The statement also serves to inform its members as to the scope and range of its proper activities and to assure them it will not involve them in remote and uncontemplated lines of activity.

*Id. (citations omitted).* In this case, the MMA's Certificate of Organization indicates that it is a "non-partisan" entity.[10] MMA asserts that the organization may advocate for legislation, but does not do so along party lines. (Def.'s Opp. Mot. 25.) The MMA provides Webster's Third New International Dictionary definition of the word as: "(i) not affiliated with or committed to

---

[10] The Certificate of Organization states:

The purposes of said corporation are to serve as an association for the promotion of good municipal government; to be a non-political and non-partisan organization dedicated to the purpose of promoting good municipal government by the exchange of ideas and information through the united effort and cooperation of its members.

12

the support of a particular political party; (ii) viewing matters without regard to the political party affiliations of members; and (iii) composed, appointed or elected without regard to the political party affiliations of members."[11]

MMA is not affiliated with any political party. (Joint Stip. ¶ 66.) Further, members of the Executive Committee are elected without regard to political affiliation. However, Plaintiff asserts that an individual candidate cannot be separated from various campaigns and Initiatives that MMA may take a stance on. Notwithstanding the "Meaning" behind each individual word in the MMA's Certificate of Organization, the MMA is correct in noting that the *ultra vires* doctrine is antiquated as applied to present-day corporate law. In fact, the statute governing the doctrine in the State of Maine states: "No act of a corporation . . . shall be invalid by reason of the fact that the corporation was without such capacity to do such act. . . ." 13-B M.R.S § 203(1). However, it is recognized in the statute that such a claim may be brought against the corporation to enjoin the continuation of unauthorized acts. *Id.* The Plaintiffs understand that "a finding of *ultra vires* imposes no retroactive penalty on the MMA and only requires that the MMA adhere to its charter prospectively." (Pls.' Mot 24.)

Because the purpose set forth in the Certificate of Organization is sufficiently broad enough to encompass the purposes as interpreted by the Defendant, and because a claim for *ultra vires* does not grant the Plaintiff relief, the Defendants Motion for Summary Judgment is granted as to Plaintiffs' *ultra vires* claim.

---

[11] MMA contends that it does not take part in political campaigns for candidates for political office and it does not take positions or endorse any candidates for political office and does not advocate against candidates. (Def.'s Opp. Mot. 26-7.)

13

## C. *Plaintiff Is Not Entitled to Injunctive Relief on Counts V and VI*

Before granting an injunction, Maine courts must find the following criteria:

(1) that plaintiff will suffer irreparable injury if the injunction is not granted;
(2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant;
(3)[that the plaintiff succeed on the merits]; and
(4) that the public interest will not be adversely affected by granting the injunction.

*Ingraham v. Univ. of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982) (*citing Women's Cmty. Health Ctr. v. Cohen*, 477 F.Supp. 542, 544 (D.Me.1979); *UV Indus. Inc. v. Posner*, 466 F.Supp. 1251, 1255 (D.Me.1979)); *see also Fitzpatrick v. Town of Falmouth*, 2005 ME 97, ¶ 18, 879 A.2d 21 (Me. 2005) (clarifying the third prong of the test). The court does not consider these elements in isolation, but weighs all the criteria together in determining whether injunctive relief is proper in the specific circumstances of the case. *See Windham Land Trust v. Jeffords*, 2009 ME 29, ¶ 41, 967 A.2d 690 (*citing Walsh*, 608 A.2d 776, 778). For example, if the evidence of success on the merits is strong, the showing of irreparable harm may be subject to less stringent requirements. *Dep't of Envtl. Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989). However, the failure to demonstrate any one of the elements requires the injunctive relief be denied. *Bangor Historic Track, Inc. v. Dep't of Agric.*, 2003 ME 140, 837 A.2d 129 (*citing Town of Charleston v. Sch. Admin. Dist. No. 68*, 2002 ME 95, ¶¶ 6–7, 798 A.2d 1102).

### i. *Irreparable Injury*

Plaintiffs contend that they have been irreparably harmed. As municipal taxpayers, Plaintiffs have experienced MMA's interference with various taxpayer Initiatives, and fear that the behavior will continue into the future. Further, Plaintiffs argue that each has suffered a particularized harm as contributors and participants in the campaigns opposed or supported by

14

MMA.[12] (Pls.' Mot. 29.) Irreparable injury is defined, as "injury for which there is no adequate remedy at law." *Bangor Historic Track*, 2003 ME 140, ¶ 10, 837 A.2d 129. Plaintiffs rely on vague generalities suggesting that they were injured. In this case, it is the Plaintiffs who have the burden of establishing such injury. However, when the record does not support a finding of irreparable injury, injunctive relief must be denied. *Id.* (citing *Town of Charleston*, 2002 ME 95, ¶ 7, 798 A.2d 1102).

Defendant argues that the grievance set forth by the Plaintiffs is moot in that "they are seeking relief based on hypothetical future rights, not present fixed rights."[13] (Def.'s Opp. Mot. 31.) The Law Court has long held:

> A long-standing requirement for review by this Court is that the case present us with a justiciable controversy. A justiciable controversy is a claim of present and fixed rights, as opposed to hypothetical or future rights, asserted by one party against another who has an interest in contesting the claim. Accordingly, rights must be declared upon the existing state of facts and not upon a state of facts that may or may not arise in the future.

*Sensible Transp.*, 658 A.2d at 215 (*citing Connors v. International Harvester Credit Corp.*, 447 A.2d 822, 824 (Me. 1982)). In Maine, the test for mootness is whether "sufficient practical effects [flow] from the resolution of [the] litigation to justify the application of limited judicial resources." *Id.* (citing *State v. Gleason*, 404 A.2d 573, 578 (Me. 1979)). However, various exceptions to the mootness doctrine apply in this state.

> First, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief. Second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public. Third, issues which may be

---

[12] The Plaintiffs allege that the MMA used their own tax dollars against them and fear that it will do so again in the future. (Pls.' Mot. 29.)

[13] The Defendant argues that the Citizen Initiatives have concluded and neither party knows what Initiatives will arise in the future. Citing *Sensible Transportation* the Defendant argues "[t]he Plaintiffs are seeking . . . relief based entirely upon a state of facts that may or may not arise in the future. (Def.'s Opp. Mot. 31.) (citing *Sensible Transp.* 658 A.2d 213, 215.)

15

repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting or determinate nature, may appropriately be decided. [14]

*State v. Gleason*, 404 A.2d 573, 578 (Me. 1979). The third exception applies in this case. While the Initiatives have concluded, there will be Initiatives in the future. "The important ingredient [is] governmental action directly affecting, and continuing to affect, the behavior of citizens in our society." *Id.* Citizen Initiatives, albeit on different topics, are capable of repetition, and because of the time of litigation, any action concerning such Initiative will likely evade review in the future.

## *II. Balancing of Harms*

In balancing the benefits and the harms, Plaintiffs contend that MMA will face no harm, as all it needs to do is conform to its corporate charter and the law "regarding initiative activities." The Defendant contends that the harms it will face as a result of an injunction well exceed the potential relief granted to the Plaintiffs. It is the Defendant's contention that the Plaintiffs seek to prohibit its speech and prevent it from advocating and performing its legislative function. (Def.'s Opp. Mot. 35.)

## *III. Success on the Merits*

The Plaintiffs have not convinced this court that they have met the burden of establishing success on the merits. Plaintiffs allege "unlawful expenditures without statutory authorization." However, the Plaintiffs fail to identify the statute requiring authorization, as well as a cause of

---

[14] The Plaintiffs note "[t]his exception has been applied in election disputes that remain in court after the disputed election. *See Rosario v. Rockefeller*, 410 U.S. 752, 756 n. 5 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2 (1972); *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969). Plaintiff also cites *Sensible Transportation* for the notion that "questions that have become moot should be avoided unless they occur in a context where there is a reasonable likelihood that the same issues will imminently and repeatedly recur in future similar contexts with serious impacts upon important generalized public interest." (Pls.' Rep. Mot. 7.) (citing *Fredette v. Secretary of State*, 693 A.2d 1146, 1147 (Me. 1997); *Sensible Transportation*, 658 A.2d at 215).

16

action under Maine law. The Plaintiff, Cyr Plantation, also alleges that the Defendant acted *ultra vires*, a cause of action, which the Plaintiffs concede will not invalidate a corporate act. Based on the record presented, it is unlikely that the Plaintiffs can meet their burden on either claim.

### *iv. Public Interest*

Plaintiffs argue that the public interest will not be adversely affected by granting an injunction as the "integrity of the electoral process" is in the best interest of the public. (Pls.' Mot 30.) The Defendant asserts that public interest is against the silencing of some speakers in order to enhance the speech of others. By preventing MMA from spending in its accustomed manner, MMA argues that this is a prohibition on its freedom of speech in contradiction with the First Amendment. (Def.'s Opp. Mot 35.) Further, the Defendant argues that voters are able to make their own decisions, notwithstanding the actions of the Defendant in advocating for or against certain legislation.

While three out of the four elements mentioned above plausibly exist, an injunction should not be granted in this case as the Plaintiffs have failed to demonstrate on the summary judgment record that they will succeed on the merits. As such, Plaintiffs Motion for Summary Judgment is Denied as to the requested injunctive relief.

## IV. CONCLUSION

Based on the forgoing, the entry shall be: Plaintiffs' Motion for Summary Judgment is DENIED as to Both Counts V and VI. Further, because the plaintiffs have failed to show that they will succeed on the merits, they have failed to meet the necessary elements for injunctive relief, and thus Plaintiffs' request for injunctive relief is DENIED. The court GRANTS the Defendant's Motion for Summary Judgment in its entirety as to both Counts V and VI.

17

Pursuant to M.R. Civ. P. 79, the clerk is hereby directed to incorporate this order into the docket by reference.

12/15/14
Dated

M. Michaela Murphy, Justice
Business & Consumer Docket

Entered on the Docket: 12.15.14
Copies sent via Mail___Electronically ✓

18

**Mary Adams, et al. v. Maine Municipal Association**
**BCD-CV-14-18**


**Mary Adams, et al.**
    **Plaintiffs**

        Counsel:               David Crocker, Esq.
                            158 Pleasant Ave
                            Portland, ME 04103-3204


**Maine Municipal Association**
    **Defendant**

        Counsel:               Paul McDonald, Esq.
                            100 Middle St
                            PO Box 9729
                            Portland, ME 04104-5029