2003 ME 140

# BANGOR HISTORIC TRACK, INC., et al.

v.

# DEPARTMENT OF AGRICULTURE, Food and Rural Resources and Maine Harness Racing Commission

Supreme Judicial Court of Maine.

Argued: Dec. 1, 2003.
Decided: Dec. 5, 2003.

Stephen E.F. Langsdorf, Esq. (orally), William C. Moorhouse, Esq., Preti, Flaherty, Beliveau, Pachios & Haley, Augusta, for the plaintiffs.

G. Steven Rowe, AG, Jeffrey R. Pidot, AAG (orally), Mark Randlett, AAG, Augusta, for the defendants.

Thad B. Zmistowski, Esq. (orally), Gordon H.S. Scott, Esq., Eaton Peabody, Bangor, for the intervenor.

Panel: SAUFLEY, C.J., and DANA, ALEXANDER, CALKINS, and LEVY, JJ.

PER CURIAM.

[¶ 1] This matter is before the Law Court on a motion for stay pending appeal filed by Bangor Historic Track, Inc., Capital Seven, LLC, and Shawn A. Scott (hereinafter BHT). The motion, filed pursuant to M.R.App. P. 10(c), seeks to (1) stay the order of the Superior Court (Kennebec County, *Marden, J.*) denying BHT's motion for a temporary restraining order, and (2) enjoin the Department of Agriculture, Food and Rural Resources and the Maine Harness Racing Commission from releasing to the public information received in connection with BHT's application for a harness racing license pursuant to 8 M.R.S.A. § 271(1) (Supp.2002). BHT contends that if the information is disclosed while their appeal is pending, their complaint for injunctive relief will become moot and they will suffer irreparable harm. For the reasons set out below, we deny the motion for stay and the injunction.

## I. CASE HISTORY

[¶ 2] BHT has applied to the Maine Harness Racing Commission for a harness racing license. The governing statute, 8

M.R.S.A. § 271(1), requires, among other things, that the Commission be satisfied that "the applicant, its members, directors, officers, shareholders, employees, creditors and associates are of good moral character; that the applicant is financially responsible; and that the award of racing dates to the applicant is appropriate under the criteria contained in subsection 2."[1] During the summer of 2003, BHT submitted a large volume of information to the Commission, and the Commission staff obtained other information, including records from the states of Nevada, Louisiana, and New York. In September 2003, the Commission, by agreement, ordered that distribution of the out-of-state documents would be limited to the parties involved in the licensing proceedings.

[¶ 3] In November 2003, the Maine Attorney General received four separate Freedom of Access Act, 1 M.R.S.A. §§ 401–410 (1989 & Supp.2002), requests. The requests were from news media reporters seeking access to copies of the BHT application documents, including a background investigation and a draft "suitability report" prepared by staff of the Commission and the Department. On November 20, 2003, the Commissioner of Agriculture responded to the access requests and agreed to release redacted versions of the requested documents at noon on Wednesday, November 26.

[¶ 4] BHT filed a complaint for declaratory and injunctive relief, alleging that certain information designated to be released to the public by the Commissioner of Agriculture is confidential and not subject to disclosure pursuant to the Freedom of Access Act. Additionally, BHT alleges that certain materials are nonconviction data that may be disseminated only to criminal justice agencies pursuant to 16 M.R.S.A. § 613 (1988); that disclosure of certain materials would constitute an invasion of personal privacy or disclose confidential commercial or financial information prohibited by 16 M.R.S.A § 614(1)(C) & (F) (Supp.2002); that public disclosure of records from other states was barred by agreements with those states; and that the Commissioner of Agriculture lacked authority to disclose records that were subject to the Harness Racing Commission's nondisclosure order.

[¶ 5] The trial court afforded BHT a prompt hearing on the request for a temporary restraining order. During the hearing on November 25, the court heard argument and received affidavits and other documents from BHT, the State, the news media intervenors, and an individual third party whose name apparently appears in the records that are subject to dispute. However, the many documents at issue were not submitted to the court for in camera inspection. Of particular note, no party provided copies of the agreements with other states, which BHT contends prohibit disclosure of material provided from those states. The Attorney General represents that the agreements with other states contemplate the possibility of disclosure in response to a Freedom of Access Act request.

[¶ 6] On November 26, the court entered a detailed order denying BHT's motion, concluding that "[t]he plaintiffs claim irreparable harm but have not presented any information, by affidavit or otherwise, describing their harm or the lack of remedy at law. Simply saying that it will be harmful is not sufficient, particularly

1. The Department of Agriculture has certain strategic and leadership functions with the Commission, and is required to "maintain an ongoing review of the statutes and rules relating to harness racing and make recommendations to the Governor, the Legislature and the commission." 8 M.R.S.A. § 263–B(3) (Supp. 2002).

where finances and moral character are the essence of the issue at hand." The court rejected BHT's contention that it should enforce the Harness Racing Commission's nondisclosure order, reasoning that (1) BHT failed to take action with the Commission to enforce the Commission's order; and (2) the applicable statute governing the confidentiality of Department of Agriculture information, 7 M.R.S.A. § 20 (2002), grants the Commissioner, not the Commission, the authority to determine what information is confidential.

[¶ 7] BHT immediately motioned the Superior Court to stay the effect of its order, but the court denied the motion. BHT then filed this appeal and an emergency motion to stay, which was granted temporarily to permit our hearing on the motion.

## II.   RELEVANT STATUTES

[¶ 8] Maine's Freedom of Access Act provides that a record is public if it "is in the possession or custody of an agency or public official of this State … and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business." 1 M.R.S.A. § 402(3) (Supp.2002). The Act also provides that it "shall be liberally construed and applied to promote its underlying purposes and policies" favoring disclosure. *Id.* § 401 (1989). Under the Act, some records are excepted from the general proposition favoring disclosure, including records that "have been designated confidential by statute." *Id.* § 402(3)(A). The Department of Agriculture and the Commission are governed by 7 M.R.S.A. § 20, addressing access to its records, which states:

§ 20.   Confidential information.

1.   *Types of information.* Information provided to the department volun-

tarily or to fulfill reporting requirements is designated as confidential for the purposes of Title 1, section 402, subsection 3, paragraph A if:

A.   The person to whom the information belongs or pertains has requested that it be designated as confidential; and

B.   The department has determined that failure to designate the information as confidential would provide competitors an opportunity to obtain business or competitive advantage over the person to whom the information belongs or pertains or would result in loss or other significant detriment to that person.

Summary reports of information designated as confidential may be published using aggregate data that does not reveal the activities of an individual person or firm.

*Id.*

## III.   LEGAL ANALYSIS

[¶ 9] A party seeking injunctive relief by a temporary restraining order or a preliminary injunction has the burden of demonstrating to the court that four criteria are met. The moving party must demonstrate that (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and (4) the public interest will not be adversely affected by granting the injunction. *Dep't of Envtl. Prot. v. Emerson,* 563 A.2d 762, 768 (Me.1989); *Ingraham v. Univ. of Maine at Orono,* 441 A.2d 691, 693 (Me.1982).

[¶ 10] Failure to demonstrate that any one of these criteria are met

requires that injunctive relief be denied. *Town of Charleston v. Sch. Admin. Dist. No. 68*, 2002 ME 95, ¶¶ 6–7, 798 A.2d 1102, 1104. A temporary restraining order may be granted only if it "clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant." M.R. Civ. P. 65(a); *see also Town of Charleston*, 2002 ME 95, ¶ 6, 798 A.2d at 1104; *Emerson*, 563 A.2d at 768. "[P]roof of irreparable injury is a prerequisite to the granting of injunctive relief." *Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74, 79 (Me.1980). "Irreparable injury" is defined as "injury for which there is no adequate remedy at law." *Id.*

[¶ 11] Because injunctive relief is an equitable remedy, we review a court's grant of injunctive relief for an abuse of discretion. *Eaton v. Cormier*, 2000 ME 65, ¶ 4, 748 A.2d 1006, 1008. However, fact-finding that is a prerequisite for judicial action, such as a finding of irreparable injury, or lack thereof, is reviewed for clear error. *See State v. Pineo*, 2002 ME 93, ¶ 6, 798 A.2d 1093, 1096.

[¶ 12] BHT, as the moving party, has the burden of proof to present evidence sufficient to support its claims of irreparable injury. Despite this burden, BHT presented the court with no documents for in camera review to support its claim that if the documents are disclosed it will result in injury. BHT presented none of the contracts with the other states to support its claim, disputed by the Attorney General, that the Commission had unequivocally agreed not to disclose the records received from those other states. In addition, BHT presented nothing to demonstrate that the redactions contemplated by the Commissioner do not resolve its privacy and related concerns. Beyond vague generalities suggesting that disclo-

sure may cause injury, there is insufficient evidence in the record to support a finding of irreparable injury. When the record does not support a finding of irreparable injury, injunctive relief must be denied. *Town of Charleston*, 2002 ME 95, ¶ 7, 798 A.2d at 1104. We agree with the trial court that injunctive relief must be denied here.

The entry is:

Motion for stay and for an injunction denied. Temporary stay vacated. Remanded to the Superior Court.