STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-07-263

TD BANKNORTH INSURANCE
AGENCY INC.,

Plaintiff,

v.

**ORDER FOR PRELIMINARY
INJUNCTION**

DONALD L. GARBRECHT
LAW LIBRARY

LORI S. LAPE,

Defendant.

AUG 2 0 ZUU/

Defendant Lori Lape was employed by TD Banknorth Insurance Agency, Inc. (TDBIA) from 2000 to April 12, 2007 when she resigned her position. She was originally hired as an Account Specialist I to service the requirements of plaintiff's customers. In 2003 she was promoted to Account Specialist II and in 2006 to Account Specialist III. Lape's duties and responsibilities increased with each promotion. In her final position she was solely responsible for the management of several large corporate accounts, including the Maine Dental Association and the Maine College of Art.

When she was first hired and again when she was promoted to Account Specialist II in 2003 she executed a "Non-Solicitation and Confidentiality Agreement". *See* plaintiff exhibit 5 (dated August 10, 2001) and exhibit 6 (dated May 12, 2003). The 2003 agreement remained in effect until her separation from TDBIA. A new agreement was not signed on her promotion to Account Specialist III in 2006.

After fling of the complaint and notice to defendant, the court issued a Temporary Restraining Order on May 21, 2007 that, *inter alia*, prevented defendant from contacting, soliciting or selling insurance and related products "to any existing client,

customer, or account of TDBIA as defined in the Agreement." *See* TRO, p.2. The court set the matter for a hearing on a preliminary injunction on May 31, 2007.

At the hearing for preliminary injunction, the plaintiff appeared by counsel and presented witnesses and exhibits. The defendant was represented by counsel but did not appear in person nor did she present other witnesses.

The test under Maine law to obtain preliminary injunctive relief is well established. TDBIA must demonstrate that

1. It will suffer irreparable injury if the injunction is not granted;

2. Such injury [to TDBIA] outweighs any harm which granting the injunctive relief would inflict on the other party [Lape];

3. It has a likelihood of success on the merits (at most a probability; at least a substantial possibility); and,

4. The public interest will not be adversely affected by granting the injunction.

*Bangor Historic Track Inc. v. Department of Agriculture*, 2003 ME 140, ¶¶ 9 and 10, 837 A.2d 129, 132-133 (other citations therein omitted).

The operative agreement between the parties (plaintiff exhibit 6) does not prevent Lape from engaging in or accepting similar employment with a competitor, which she has done, but it does provide that "for a period of three years after termination" of her employment, the defendant

> shall not, directly or indirectly, or through the use of any other party or entity, whether on behalf of or in conjunction with any entity or person, and whether for his/her own benefit or account or for the benefit or account of any person or entity other than the Company, interfere or attempt to interfere with the relationship of the Company with any existing client, customer, or account or any prospective client, customer, or account.

*See* plaintiff's exhibit 6 ¶ 7(D).

2

In addition, the agreement required her to return "[a]ll property, materials and information relating . . . to the business of the Company," plaintiff's exhibit 6, ¶ 5, and to keep confidential and to not use, divulge or reveal any confidential or proprietary information except as authorized by TDBIA. Plaintiff's exhibit 6, ¶ 4.

Beginning several months before her termination, the plaintiff asserts, and for purposes of this Order, the court finds that Lape transmitted substantial confidential and proprietary information that was the exclusive property of plaintiff to her personal home computer. The court also finds that she has had contact with existing clients of TDBIA, even during her employment, for the purpose of continuing to service their insurance needs after her severance from TDBIA.

It was permissible and not uncommon for TDBIA employees to electronically access account information from remote locations if they had a specially coded security key fob that would allow access via the Internet and email. To the extent that Lape requires access to company information from home, this can be done through TDBIA's server and it is not necessary to email copies of documents to her personal home computer. In the absence of any evidence to the contrary, the court infers and finds that the transfer of confidential and proprietary information to her personal computer was for personal use and possible contact with existing TDBIA clients or for use in soliciting other clients wherein this information may provide her with a competitive advantage not otherwise available.

Although the Agreement provides for liquidated damages in the event of a violation, the solicitation of TDBIA's clients inevitably infringes on intangible established business relationships. This injury or damage is irreparable, *see Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74 (Me. 1980), and certainly outweighs any harm to the defendant. Even though she may have managed clients' accounts, she was

3

doing so as an agent of TDBIA and not for her personal benefit. If, in fact, this information was sent to her home computer solely for the purpose of servicing accounts for plaintiff's benefit, as suggested by her counsel, and not for her own benefit, then the issuance of an injunction will be of little or no consequence to her. The defendant is not prohibited from employment in the insurance industry; an injunction only prevents her from contacting certain parties and using proprietary information of TDBIA.

Our Law Court has approved restrictive employment contracts so long as they are reasonable. *See Chapman & Drake v. Harrington*, 544 A.2d 645 (Me. 1988) and *Brignell v. Albert*, 666 A.2d 82 (Me. 1995).

Based on evidence presented at the hearing, the court finds that it is probable that the plaintiff will prevail.

Finally, no public interest will be adversely affected by granting the injunction; in fact, it is beneficial to public policy that valid private agreements are upheld and enforced.

At the hearing, the plaintiff produced unrebutted evidence that the defendant, contrary to her responsive affidavit, did not return all the documents she misappropriated for her own use. Additionally, the defendant's representation that she deleted all the confidential and proprietary information from her personal computer can be verified only with an inspection by a computer expert.

The clerk will make the following entry onto the docket as the court's order on plaintiff's motion for preliminary injunction:

It is ordered that:

A. Defendant shall not, directly or indirectly, on behalf of any person, firm, or corporation, call, solicit, or contact for the purpose of/or to sell insurance, or other similarly products including but not limited to surety and other types of bonds, self-insurance programs, consulting services, niche and association programs, financial services and products,

employee benefits programs, and other risk management products and services to any "existing client, customer, or account" of TDBIA as defined in the Agreement.

**B.** Defendant shall, not later than 5 business days from the date of this Order, turn over to the attorneys for TDBIA, and immediately cease from using, divulging, or misappropriating any and all confidential and proprietary information of TDBIA, including any and all originals and reproductions in any form, whether in hard copy or stored electronically in any format, which are in defendant's possession, custody, or control. The term "Confidential and Proprietary Information" is defined to include:

> Customer advertising, pricing and billing information, including but not limited to names of customers, customer contacts, policy expiration dates, policy terms, familiarity with customer's risk characteristics, and information concerning the insurance markets for commercial risks including large or unusual commercial risks; customer practices, policies, and preferences; the company's and the employee's customer and prospect lists, including customer and prospective customer identities, contacts, and information; the company's billing practices, marketing plans or proposals or strategies, promotional plans or proposals or strategies, financial records and information, business forecasts or plans, contracts and contractual forms; all renewal information and expiration dates for policies and other products; and other such information which relates to the company's business.

**C.** Defendant shall not use, divulge, or benefit from, in any manner, whether directly or indirectly, any of the confidential and proprietary information of TDBIA.

**D.** Defendant shall not destroy, alter, hide, or transmit to anyone other than the attorneys for TDBIA any of the confidential and proprietary information of TDBIA.

**E.** Defendant shall, within 5 business days from the date of this Order, provide to the attorneys for TDBIA a full and complete accounting of any and all contact, correspondence, telephone calls, meetings, and any other communications, with any customer, client, or existing account of TDBIA from January 1, 2007 to the date of providing the list.

**F.** It is further ordered that within 5 business days from the date of this Order, unless counsel mutually agree to another time, defendant shall make her personal computer available for inspection by an expert of plaintiff's selection.[1] Counsel shall agree upon a time and place for the

---

[1] The expert shall not be a regular employee or agent of plaintiff except for the purpose of conducting this inspection.

5

inspection.[2] The expert is authorized to fully inspect plaintiff's computer to determine that all confidential and proprietary information and any other material emailed by defendant from plaintiff's server to her personal computer has been permanently deleted and removed. The inspector may open any and all files on defendant's computer; however the expert shall not under any circumstances copy or reveal to any person, including counsel for both parties, any personal information that is neither directly or indirectly related to plaintiff's business.

The inspector shall provide to counsel for both parties a full list and inventory of any files, subject to this order, that remained and were permanently deleted and/or removed from the hard drive.

**G.** TDBIA is not required to give bond pursuant to M.R.Civ.P. 65(c). The court finds that it is unlikely that TDBIA will be liable for costs or damages incurred or suffered by defendant as a result of being wrongfully enjoined or restrained by this order and in the event that plaintiff does become liable for damages to defendant, the court believes plaintiff to be sufficiently solvent to satisfy a judgment that a bond is not required.

**H.** Any further proceeding may be acted on by any justice of the Superior Court. M.R.Civ.P. 65(f).

**I.** This preliminary injunction shall remain in full force and effect until further order of court.

SO ORDERED.

DATED:     June 6, 2007

Thomas E. Delahanty II
Justice, Superior Court

Date: 06-06-07
At the direction of the Court, this
Order shall be incorporated into the
docket by reference. Rule 79 (a)

Justice, Superior Court

---

[2] If counsel do not agree, the court will decide a time and place under M.R.Civ.P. 26(g).

6

ERIC UHL ESQ         - P
PO BOX 7250
PORTLAND ME 04112-7250

: COURTS
nd County
ox 287
1e 04112-0287

STEPHEN CANDERS ESQ
DOUGLAS HENDRICK ESQ
MAINE LEGAL ASSOCIATES
11 MAIN ST
SUITE 1
KENNEBUNK ME 04043