MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2015 ME 103
Docket:         BCD-15-225
Submitted
  On Briefs:    July 1, 2015
Decided:        August 4, 2015

Panel:          ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

NATIONAL ORGANIZATION FOR MARRIAGE

v.

COMMISSION ON GOVERNMENTAL ETHICS AND ELECTIONS
PRACTICES

**ORDER ON PETITIONER'S MOTION TO CLARIFY STAY OR, IN THE
ALTERNATIVE, MOTION FOR A STAY OF AGENCY ACTION**

PER CURIAM

[¶1]  The National Organization for Marriage (NOM) has moved for a stay

pending the resolution of its appeal from a decision of the Business and Consumer

Docket (*Murphy, J.*) denying NOM's petition for review, pursuant to M.R.

Civ. P. 80C, of a determination of the Commission on Governmental Ethics and

Elections Practices.  The Commission concluded that NOM is a "ballot question

committee" (BQC) and is therefore subject to and in violation of the registration

and reporting requirements of 21-A M.R.S. § 1056-B (2008).[1]

---

[1]  Title 21-A M.R.S. § 1056-B has been amended since the events at issue here, primarily in ways that
are not relevant to this case, but also to change some of the language that NOM has challenged in federal
court as unconstitutionally vague.  *See* P.L. 2009, ch. 190, § A-20 (effective Sept. 12, 2009); P.L. 2009,
ch. 366, § 7 (effective Sept. 12, 2009); P.L. 2009, ch. 524, §§ 8-13 (effective July 12, 2010); P.L. 2011,

2

[¶2]   NOM asserts that the Commission's determination is automatically stayed pending appeal pursuant to M.R. Civ. P. 62(e), and, alternatively, petitions for a stay of the Commission's decision pursuant to our inherent equitable authority.[2]  The Commission opposes the motion.  After review of the motion record, we conclude that the Commission's decision is not automatically stayed, and we deny NOM's motion for a stay.

## I. BACKGROUND

[¶3]   NOM is a national nonprofit advocacy corporation "dedicated to preserving the institution of marriage as between one man and one woman."  In 2009, NOM made contributions of more than $2 million to Stand for Marriage Maine, a political action committee (PAC) that was formed to promote the November 2009 people's veto referendum to suspend a Maine law allowing same-sex marriage.  Despite its active involvement in support of the referendum, NOM never registered with the Commission as a "ballot question committee" pursuant to 21-A M.R.S. § 1056-B, which, at the time, required registration by any person who received contributions in excess of $5,000 "for the purpose of . . .

ch. 389, §§ 39-42 (effective June 20, 2011); P.L. 2011, ch. 389, § 38 (effective Aug. 1, 2011) (now codified at 21-A M.R.S. § 1056-B (2014)).

   [2]  Among other things, NOM seeks to stay the portion of the Commission's decision that requires NOM to file a consolidated campaign finance report.

influencing in any way a ballot question."[3] Registering as a BQC would have required NOM to publicly report its donors and the expenditures it made to influence the referendum. *See id.* § 1056-B(2).

[¶4] In August 2009, the Commission received a complaint that NOM was not in compliance with the registration and reporting requirements of section 1056-B. After considering evidence submitted by both sides, the Commission voted to commence a formal investigation of NOM in October 2009. Shortly after the Commission began its investigation, NOM mounted several ultimately unsuccessful legal challenges in federal court to the constitutionality of Maine's campaign and election laws.[4] *See Nat'l Org. for Marriage v. McKee*, 666 F. Supp. 2d 193 (D. Me. 2009) (denying NOM's motion for a temporary restraining order and finding that NOM did not have a high likelihood of success on the merits of its

---

[3] The statute required "[a]ny person not defined as a political action committee who solicits and receives contributions or makes expenditures, other than by contribution to a political action committee, aggregating in excess of $5,000 for the purpose of initiating, promoting, defeating, or influencing in any way a ballot question must file a report with the commission." 21-A M.R.S. § 1056-B (2008). In addition, the statute required that any such person "register with the commission as a ballot question committee" within seven days of receiving contributions or making expenditures in excess of $5,000. *Id.* The current statute contains substantially similar language, but requires that a contribution be "for the purpose of initiating or influencing" a ballot question, rather than "for the purpose of initiating, promoting, defeating, or influencing in any way" a ballot question. *See* 21-A M.R.S. 1056-B (2014).

[4] Initially, NOM challenged only section 1056-B and the reporting and registration requirements for ballot question committees, but then commenced a separate lawsuit arguing that Maine's PAC laws were unconstitutionally vague. *See Nat'l Org. for Marriage & Am. Principles in Action v. McKee*, 765 F. Supp. 2d 38, 40 n.1 (D. Me. 2011) (describing the two lawsuits). The First Circuit upheld the constitutionality of Maine's PAC laws in *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 56-70 (1st Cir. 2011), and reversed the District Court's conclusion that the use of the term "influencing" as used in the PAC statute was unconstitutionally vague. *See Nat'l Org. for Marriage v. McKee*, 723 F. Supp. 2d 245, 259-61 (D. Me. 2010).

constitutional claims); *Nat'l Org. for Marriage & Am. Principles in Action v. McKee*, 765 F. Supp. 2d 38, 44-53 (D. Me. 2011) (granting summary judgment in favor of the Commission and rejecting NOM's First Amendment, overbreadth, and vagueness challenges to the constitutionality of section 1056-B); *Nat'l Org. for Marriage, Inc. v. McKee*, 669 F.3d 34, 50 (1st Cir. 2012) (affirming the judgment of the District Court and concluding that "section 1056-B satisfies constitutional standards").

[¶5]   After considering evidence and argument submitted by NOM and Commission staff, the Commission issued a written decision with extensive factual findings on June 30, 2014.  The Commission concluded that NOM had received contributions in excess of $5,000 for the purpose of influencing the people's veto referendum and ordered that NOM register as a BQC and file the appropriate campaign finance reports.  The Commission also ordered that NOM pay $50,250 in fines for failing to timely register and file all of the required reports dating back to 2009.

[¶6]  Following the Commission's decision, NOM filed an application with the Commission for a stay pending appeal pursuant to 5 M.R.S. § 11004 (2014). The Commission granted NOM's application in part, staying the requirement that NOM submit a campaign finance report until NOM could petition the Superior Court for a stay, but denying NOM's application for a stay in all other respects.

On August 1, 2014, NOM filed a petition in the Superior Court (Kennebec County)[5] for review of the Commission's decision pursuant to M.R. Civ. P. 80C, which was accompanied by a motion for a stay pending appeal. The court issued an order on September 9, 2014, providing "by agreement of the parties" that NOM was not required to file a campaign finance report until twenty-one days after the court's final decision on the Rule 80C petition and that NOM's motion for a stay was therefore deemed withdrawn. Following full briefing and a hearing, the court denied NOM's petition for review of the Commission's decision on April 13, 2015.

[¶7] On May 4, 2015, NOM filed a timely notice of appeal and also filed a new motion in the trial court for a stay of the Commission's decision. The appeal was docketed in the Law Court on May 11, 2015, but on June 1, 2015, the trial court denied NOM's request for a stay, finding that Rule 62(e) did not apply and that NOM had not met the requirements for a stay of agency action set out in 5 M.R.S. § 11004.[6] On June 5, 2015, NOM filed a motion with us, seeking

---

[5] The case was transferred to the Business and Consumer Docket on October 28, 2014.

[6] NOM did not appeal that decision, instead choosing to file the application for a stay that is now before this Court. NOM's failure to appeal does not bar our consideration of NOM's motion in this Court because the Business and Consumer Docket no longer had jurisdiction to rule on NOM's motion for a stay. *See* M.R. App. P. 3(b); *Doggett v. Town of Gouldsboro*, 2002 ME 175, ¶ 5, 812 A.2d 256 ("When an appeal is taken from a trial court action, the trial court's authority over the matter is suspended and[] [t]he trial court shall take no further action pending disposition of the appeal by the Law Court." (alteration omitted) (quotation marks omitted)); *Hawkes Television, Inc. v. Me. Bureau of Consumer Credit Prot.*, 462 A.2d 1167, 1170 (Me. 1983) (holding that "[t]he Superior Court had no authority in this

6

"clarification" or "confirmation" that the trial court's judgment and the Commission's decision are automatically stayed pursuant to M.R. Civ. P. 62(e), or, alternatively, seeking a stay pursuant to our inherent power to grant a stay. *See* M.R. App. P. 10. That motion is at issue here.

## II. ANALYSIS

[¶8] NOM's motion presents two questions: First, whether M.R. Civ. P. 62(e) applies to automatically stay the agency action in this case, and, second, if there is no automatic stay, whether we should nevertheless grant a stay in order to preserve the status quo pending the outcome of the appeal.

A. Automatic Stay Pursuant to M.R. Civ. P. 62(e)

[¶9] NOM argues that the Commission's decision is automatically stayed pursuant to M.R. Civ. P. 62(e), which provides that, subject to several exceptions, "the taking of an appeal from a judgment shall operate as a stay of execution upon the judgment during the pendency of the appeal."

[¶10] As an initial matter, the term "judgment" is defined in the Rules as "a decree and any order from which an appeal lies." M.R. Civ. P. 54(a); *see also First NH Banks Granite State v. Scarborough*, 615 A.2d 248, 251 (Me. 1992) (applying the definition in Rule 54(a) to Rule 62(e)). That definition does not

case to issue an injunction after [the appellant's] appeal had been docketed in the Law Court"). In fact, the trial court in its order on NOM's request for a stay acknowledged the possibility that it did not have authority to act on the request.

include agency actions, because an appeal to the Law Court does not lie directly from the agency's decision but instead from the Superior Court's review of that decision.[7]  Additionally, the plain language of "execution upon the judgment" in M.R. Civ. P. 62(e) does not include agency actions because they are not judgments upon which an execution may issue.  *See* M.R. Civ. P. 69.

[¶11]  Moreover, Rule 80C provides a clear mechanism for seeking a stay of final agency action in the Superior Court.  *See* M.R. Civ. P. 80C(b) (stating that the procedure for stays of final agency action "shall be as provided by 5 M.R.S.[] § 11004").  Pursuant to that Rule, the applicant must first seek a stay from the agency, and only if that fails may the applicant seek a stay from the Superior Court.  *See* 5 M.R.S. § 11004; *see also Allied Res., Inc. v. Dep't of Pub. Safety*, 2010 ME 64, ¶¶ 6-8, 999 A.2d 940 (explaining that the Superior Court granted a stay of agency action pursuant to M.R. Civ. P. 80C(b) and that the Law Court granted a stay, but not discussing the possibility of an automatic stay pursuant to M.R. Civ. P. 62(e)).  Section 11004 also specifically states that "[t]he filing of a petition for review shall not operate as a stay of the final agency action pending judicial review," which precludes an automatic stay of the agency's decision

---

[7]  Although NOM purports in one part of its motion to seek a stay of the Superior Court's judgment, a stay of that judgment would have no effect, as it merely denied NOM's petition for review.  Instead, the substance of NOM's motion and NOM's prayer for relief make clear that NOM seeks a stay of the Commission's underlying decision.

pursuant to M.R. Civ. P. 62(e), at least at the initial review stage. *See* 5 M.R.S. § 11004. It would make little sense to read Rule 62(e) to entitle a litigant to an automatic stay of agency action pending appeal in the Law Court, but not during review by the Superior Court.

[¶12] We therefore conclude that Rule 62(e) does not apply to the agency action at issue in this case, and the Commission's decision is not automatically stayed pending appeal.

B. Request for a Stay Pending Appeal

[¶13] We now address NOM's alternate request for a stay pursuant to our inherent authority to grant a stay pending appeal. *See* M.R. Civ. P. 62(g) (stating that the Rule does "not limit any power of the . . . Law Court during the pendency of an appeal to suspend, modify, restore, or grant an injunction or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered"); M.R. App. P. 10 (describing motion practice in the Law Court); *see also Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 1, 837 A.2d 129 (per curiam) (denying a motion for a stay pending appeal filed in the Law Court).

[¶14] "Requests for stays or injunctions before the Law Court are subject to the same standards for obtaining injunctive relief that are applied in the trial

courts." *Maine Appellate Practice* § 10.1 at 107-08 (4th ed. 2013). Therefore, the party seeking the stay has the burden of demonstrating

> that (1) it will suffer irreparable injury if the [stay] is not granted; (2) such injury outweighs any harm which granting the [stay] would inflict on the other party; (3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and (4) the public interest will not be adversely affected by granting the [stay].

*Bangor Historic Track, Inc.*, 2003 ME 140, ¶ 9, 837 A.2d 129 (citing *Dep't of Envtl. Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989)); *see also Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010) (applying similar factors to a motion for a stay pending appeal).

1.     Irreparable Injury

[¶15] NOM argues that, if the Commission's decision is implemented and it is required to file the 2009 campaign finance report, it will suffer irreparable injury because it will be forced to publicly disclose the names, addresses, and personal information of its donors, which it contends constitutes a restraint on the right to freedom of association. *See NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462-63 (1958); *see also Citizens Against Rent Control/Coalition for Fair Hous. v. City of Berkeley*, 454 U.S. 290, 298 (1981) ("Contributions by individuals to support concerted action by a committee advocating a position on a ballot measure is beyond question a very significant form of political expression."). Although the

10

assertion of a restraint on First Amendment rights "does not automatically require a finding of irreparable injury," *Respect Maine PAC*, 622 F.3d at 15 (quotation marks omitted), the effect of releasing the information to the public cannot be reversed, nor can NOM be compensated for the release of the information. Thus, NOM has demonstrated that it will suffer irreparable injury if the stay is not granted.[8]

### 2. Harm to the Commission

[¶16] The Commission has indicated a willingness to delay the enforcement of its decision at least until NOM has had the opportunity to pursue a stay from this Court. While this self-imposed restraint is admirable, it suggests that any harm to the Commission from a stay would be minimal at most. In addition, the Commission does not argue in its filings with us that it will suffer any harm from a further stay of its decision. Thus, the injury to NOM outweighs any injury to the Commission that would result from a further delay in enforcement.

---

[8] The Commission offers that, in addition to the injury that NOM identifies, there is the danger that if a stay is not granted, the enforcement of the Commission's decision will render NOM's appeal to this Court moot. *See Globe Air, Inc. v. Thurston*, 438 A.2d 884, 885 (Me. 1981). Because the Commission has indicated to this Court a willingness to delay enforcement of its order at least until "NOM (has) had an opportunity to obtain a court-ordered stay," and because NOM also challenges the fines charged by the Commission, the denial of a stay will not necessarily moot the appeal. We do, however, take that possibility into account as part of the four-factor balancing test, weighing it and the prospect of irreparable injury to NOM's First Amendment rights against NOM's likelihood of success on the merits, while recognizing that if the likelihood of success on the merits is low, the consequences of NOM's claims becoming moot are limited.

3.      Likelihood of Success on the Merits

[¶17]   NOM's substantive arguments on appeal primarily center on the constitutionality of 21-A M.R.S. § 1056-B as applied to NOM and the Commission's interpretation and application of section 1056-B to NOM's activities in support of the 2009 referendum.  In this part of our analysis, NOM must show that there is "a substantial possibility" of success on those claims.  *See Bangor Historic Track, Inc.*, 2003 ME 140, ¶ 9, 837 A.2d 129; *Crafts v. Quinn*, 482 A.2d 825, 830 (Me. 1984).

[¶18]   First, NOM argues that the Commission's decision departs from the interpretation of section 1056-B upheld by the First Circuit in *Nat'l Org. for Marriage, Inc.*, 669 F.3d at 44-50, and thus, as applied by the Commission to NOM, section 1056-B is unconstitutional.  The First Circuit addressed NOM's as-applied vagueness challenge to the constitutionality of the definition of "contribution" in section 1056-B(2-A)(B), concluding that the statute relies on an objective, "reasonable person" test regarding whether the solicitation would lead a contributor to believe that the funds donated would be used to support a particular ballot question, and that such an objective test is not unconstitutionally vague.[9] *Nat'l Org. for Marriage, Inc.*, 669 F.3d at 45-47.

---

[9]  Writing for the First Circuit, Judge Lipez observed:

12

[¶19]   We agree with the conclusion reached by the First Circuit and conclude that it applies here.  Contrary to NOM's contention, there is no evidence that the Commission relied on a different standard that would render the application of the statute unconstitutional.  In fact, the Commission's decision specifically states: "Applying the same analysis used by the U.S. Court of Appeals for the First Circuit, the Commission finds that NOM received 'contributions' as defined by Section 1056-B(2-A)(B) & (C)."  NOM has therefore not shown how its constitutional challenge in this appeal differs from its challenge in the First Circuit.  We thus conclude that NOM has not established a likelihood of success on the merits of its constitutional claims.

[¶20]   Second, NOM contends that the Commission erred by misconstruing the definitions of "contribution" in 21-A M.R.S. § 1056-B(2-A)(B) and (C). In particular, NOM contends that (1) the Commission ignored the requirement in subsection B that donations be made "specifically" to support a ballot question, and (2) the Commission erred in concluding that donations NOM received and transferred directly to Stand for Marriage Maine (SMM) met the definition of

The question asked is whether the words spoken—the "solicitation"—would lead a contributor to believe that the funds will be used to initiate or influence a campaign.  The answer does not require an assessment of what any particular contributor actually believed, an inquiry that could turn on the hearer's education, culture, or other background factors.  Rather, whether a communication is covered depends on the objectively reasonable meaning of the language of the solicitation; hence, the only relevant hearer is the hypothetical "reasonable person."

*Nat'l Org. for Marriage, Inc. v. McKee*, 669 F.3d 34, 46-47 (1st Cir. 2012).

contribution in subsection C without any other evidence regarding NOM's communication with those donors about the Maine ballot question. On an appeal from a review of agency action pursuant to M.R. Civ. P. 80C, "[w]e review issues of statutory interpretation de novo." *Fox Islands Wind Neighbors v. Dep't of Envtl. Prot.*, 2015 ME 53, ¶¶ 1, 11, --- A.3d ---.

[¶21] The version of subsection B in effect in 2009 defined contribution in part as "[f]unds provided in response to a solicitation that would lead the contributor to believe that the funds would be used specifically for the purpose of initiating, promoting, defeating or influencing in any way a ballot question." 21-A M.R.S. § 1056-B(2-A)(B). Contrary to NOM's contention, the Commission applied that definition throughout its analysis, explicitly finding that each of the solicitations it discussed would lead a reasonable person to believe that his or her donations were to be used specifically for supporting the Maine referendum. For example, the Commission found that references made in a thank-you note "strongly suggest that the solicitation was made in a way that would reasonably lead the [donors] to believe that their donation would be used, at least in part, *specifically* for the purpose of promoting the Maine referendum campaign." (Emphasis added.) Similarly, the Commission concluded that an email solicitation that mentioned Maine, but not the Maine referendum, "contains a message that could lead a reasonable contributor to believe that donations made in response

would be used *specifically* for the purpose of influencing the Maine referendum campaign." (Emphasis added.) Thus, NOM has not demonstrated a likelihood of success on the merits of its claim that the Commission erroneously applied subsection B to the donations at issue in this case.

[¶22] The version of subsection C that was in effect in 2009 defined contributions as "[f]unds that can reasonably be determined to have been provided by the contributor for the purpose of initiating, promoting, defeating or influencing in any way a ballot question when viewed *in the context of the contribution and the recipient's activities* regarding a ballot question." 21-A M.R.S. § 1056-B(2-A)(C) (emphasis added). The Commission concluded that the fact that certain large donations were transferred directly to SMM after they were received by NOM provided sufficient context to support a finding that the donations were "contributions" pursuant to subsection C. NOM contends that determination was an erroneous application of the law.

[¶23] We conclude that the scope of section 1056-B(2-A)(C) is ambiguous as a matter of law, and thus we will defer to the Commission's interpretation of the statute if it is reasonable. *See Kane v. Comm'r of the Dep't of Health and Human Servs.*, 2008 ME 185, ¶ 12, 960 A.2d 1196. The Commission reasonably interpreted "in the context of the contribution and the recipient's activities" in subsection C to mean that the Commission may infer from the recipient's use of

the entire contribution for a specific initiative that the donor intended the contribution to support that initiative. Thus, NOM has not shown a likelihood of success on its claim that the Commission committed an error of law when it determined that NOM's direct transfer of certain donations to SMM in support of the Maine referendum meant that those donations were contributions pursuant to subsection C.

[¶24] Finally, NOM contends that the Commission was biased against NOM and that the Commission's findings were not supported by substantial evidence in the record. As to bias, NOM has not met its burden of "present[ing] evidence sufficient to overcome a presumption that the fact-finders, as state administrators, acted in good faith." *Friends of Maine's Mts. v. Bd. of Envtl. Prot.*, 2013 ME 25, ¶ 23, 61 A.3d 689. The only evidence of bias that NOM offers in its motion is a record of the statements of dissenting Commissioners, which merely shows reasonable disagreement as to some of the decisions of the Commission, not bias against NOM.

[¶25] With regard to NOM's argument that the Commission's findings are unsupported by substantial evidence in the record, the Commission made specific findings about five categories of donations that met the definition of "contribution" in 21-A M.R.S. § 1056-B(2-A)(B) or (C). Each of those categories contained donations in excess of $5,000. Thus, to support the Commission's conclusion that

NOM was subject to the reporting requirements of section 1056-B, there only needs to be substantial evidence in the record to support its findings for at least one of those categories of contributions. That standard is met here. There was extensive evidence before the Commission that NOM repeatedly communicated with its donors about the Maine referendum and described its activities in Maine and its financial partnership with SMM when soliciting donations. Thus, there was substantial evidence to support the Commission's finding that at least $5,000 of the millions of dollars of donations that NOM received were "provided in response to a solicitation that would lead the contributor to believe that the funds would be used specifically for the purpose" of supporting the Maine referendum. *See* 21-A M.R.S. § 1056-B(2-A)(B). NOM thus has not established a likelihood of succeeding on its claim that the Commission's findings were not supported by substantial evidence in the record.

[¶26] Because NOM has not advanced any persuasive constitutional challenges to section 1056-B or any convincing arguments regarding errors of law or fact committed by the Commission in reaching its decision, it has not met its burden of demonstrating a likelihood of success on the merits.

4. The Public Interest

[¶27]　The public has an interest in the release of information about the donors behind ballot initiatives.[10] *See Nat'l Org. for Marriage, Inc.*, 669 F.3d at 40 (stating that "[t]he disclosure of information about the source of political-advocacy funds thus enables the electorate to make informed decisions" (quotation marks omitted)); *see also Citizens United v. FEC*, 558 U.S. 310, 371 (2010).　In this case, however, the ballot initiative occurred nearly six years ago, so there is no pressing public interest in the expedited disclosure of NOM's donors or expenditures.　The public interest will therefore not be harmed if the Court stays the enforcement of the Commission's decision for the duration of this appeal.

5.　　Balancing the Four Criteria

[¶28]　The criteria for granting a stay "are not to be applied woodenly or in isolation from each other; rather, the court of equity should weigh all of these factors together." *Emerson*, 563 A.2d at 768.　As we engage in that process, we recognize that, if a stay is not granted and the Commission acts to enforce its decision, NOM will likely suffer irreparable injury, including the possibility of its

---

[10]　As we noted in the discussion of irreparable injury *supra*, a law that requires disclosure of donor or membership information constitutes a restraint on the right to freedom of association. *See NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462-63 (1958).　That does not, however, doom all disclosure laws to the heap of unconstitutionality. *See Nat'l Org. for Marriage*, 649 F.3d at 56-58.　Instead, such laws are constitutional when there is a "substantial relation" between the law and a "sufficiently important governmental interest." *Citizens United v. FEC*, 558 U.S. 310, 366-67 (2010) (quotation marks omitted).　The First Circuit has held that section 1056-B promotes the sufficiently important government interest of "disseminating information about political funding to the electorate." *Nat'l Org. for Marriage, Inc.*, 669 F.3d at 40 (quotation marks omitted).

appeal becoming moot. Nevertheless, our analysis cannot ignore the fact that "[t]he sine qua non of this four-part inquiry is likelihood of success on the merits." *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 46 (1st Cir. 2005) (quotation marks omitted).

[¶29] After reviewing the motion record and carefully weighing the four criteria, we conclude that, because there clearly is no substantial possibility that NOM will succeed on the merits of its claims, a stay is not warranted under applicable principles of law and equity. The circumstances underlying the Commission's decision occurred almost six years ago, and the decision has successfully withstood federal and state court challenges during that time. NOM now asks us to decide many of the same issues and has failed to sufficiently show that it has a likelihood of succeeding on the merits. Accordingly, we deny NOM's motion for a stay pending appeal.

The entry is:

> NOM's Motion to Clarify Stay Under Rule 62(e) or, in the alternative, Motion for Stay of Agency Action is DENIED. The appeal will proceed in the usual course.

**On the motion and opposition:**

Stephen C. Whiting, Esq., The Whiting Law Firm, P.A., Portland, for appellant National Organization for Marriage

Janet T. Mills, Attorney General, and Phyllis Gardiner, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Commission on Governmental Ethics and Election Practices

Business and Consumer Docket docket number AP-2014-02
FOR CLERK REFERENCE ONLY