STATE OF MAINE                           SUPERIOR COURT
CUMBERLAND, ss                           CIVIL ACTION
                                         DOCKET NO. CV-19-98


UIG, INC.,

        Plaintiff

v.                                       ORDER


RONALD GUERIN,

        Defendant                        REC'D CUMB CLERKS OF(
                                         JUL 12 '19 PM3:59


Before the court are two motions: (1) a motion for a preliminary injunction filed by plaintiff

UIG, Inc. with its complaint and (2) a motion by defendant Ronald Guerin to dismiss a portion of

count I of UIG's complaint and to dismiss counts II and III of UIG's complaint in their entirety.[1]

In this action UIG contends that Guerin, a former shareholder of UIG who sold his shares

in 2015, has violated a restrictive covenant that prohibits him from soliciting UIG customers for

five years and permanently prohibits him from disclosing UIG files and customer lists.

The court will first address the motion to dismiss because, to the extent that the complaint

fails to state a claim, that will affect UIG's entitlement to a preliminary injunction.


Legal Standard – Rule 12(b)(6)

For purposes of a motion to dismiss, the material allegations of the complaint must be taken

as admitted. *Ramsey v. Baxter Title Co.*, 2012 ME 113 ¶ 2, 54 A.3d 710. The complaint must be

read in the light most favorable to the plaintiff to determine if it sets forth elements of a cause of

---

[1] Guerin has also recently filed a motion to stay an arbitration proceeding commenced by UIG, but UIG's
time to respond to that motion has not expired.

action or alleges facts that would entitle plaintiff to relief pursuant to some legal theory. *Bisson v. Hannaford Bros. Co., Inc.*, 2006 ME 131 ¶ 2, 909 A.2d 1010. Dismissal is appropriate only when it appears beyond doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim. *Moody v. State Liquor & Lottery Commission*, 2004 ME 20 ¶ 7, 843 A.2d 43. However, a plaintiff may not proceed if the complaint fails to allege essential elements of the cause of action. *See Potter, Prescott, Jamieson & Nelson P.A. v. Campbell*, 1998 ME 70 ¶¶ 6-7, 708 A.2d 283.

Discussion

Count I of UIG's complaint alleges that Guerin is a former employee and shareholder of UIG who left UIG and sold his shares back to UIG on September 22, 2015. He subsequently began working at the Varney Agency, a UIG competitor.

Pursuant to the Redemption and Stock Purchase Agreement that Guerin signed upon his departure, part of the consideration he received was based on his agreement that he remained subject to certain restrictive covenants contained in a Second Amended Shareholders Agreement that Guerin had entered on January 1, 2010.[2] The two covenants that UIG contends Guerin has violated are the covenant in section 14(b) and the covenant in section 14(c).

Paragraph 14(b) of the shareholder agreement provides that the parties agree the files and records of UIG are "confidential and in some respects constitute trade secrets" and shall not be disclosed to any outside person or organization.

---

[2] The Redemption and Stock Purchase Agreement and the Second Amended Shareholders Agreement are attached to the complaint and may be considered on the motion to dismiss. *Moody v. State Liquor & Lottery Commission*, 2004 ME 20 ¶ 10.

Paragraph 14(c) provides that the parties agree that if a party's employment with UIG terminates, he or she will not for the next five years directly or indirectly solicit any business from persons or organizations that were customers of UIG during the last two years of the party's employment with UIG or that were being actively solicited during the last year of the party's employment with UIG.

The shareholders agreement contains an additional restrictive covenant prohibiting a party from engaging in any business in competition with UIG for one year after the termination of employment. That provision expired in September 2016, and UIG does not allege that provision was violated.

Count II of UIG's complaint alleges that Guerin has violated the Maine Uniform Trade Secrets Act by using UIG trade secrets, including confidential customer information, at the Varney Agency. Count III of UIG's complaint asserts a claim against Guerin for unjust enrichment.

Guerin's motion to dismiss is not addressed to the claim in Count I of UIG's complaint that alleges he has violated the five-year non-solicitation covenant. Guerin does challenge the portion of Count I that alleges he has violated the non-disclosure covenant. He also challenges the Trade Secrets claim in Count II and the unjust enrichment claim in Count III.

With respect to the alleged non-disclosure violation in Count I and the alleged Trade Secrets violation in Count II, Guerin points out that the complaint does not allege any specifics as to his alleged disclosures, including the alleged disclosures of information that UIG contends constitutes trade secrets.[3] Instead, the complaint twice combines general and conclusory allegations that Guerin has violated the non-solicitation covenant with general and conclusory

___

[3] The Trade Secrets Act applies to "misappropriation" of trade secrets as defined in 10 M.R.S. § 1542(2). The only possible misappropriation that UIG is alleging is the disclosure or use of trade secrets acquired under circumstances giving rise to a duty to maintain secrecy. 10 M.R.S. § 1542(2)(B)(2)(ii). UIG has not alleged that Guerin wrongfully acquired trade secrets.

3

allegations that he has violated the non-disclosure covenant. *See, e.g.,* Complaint ¶¶ 31, 35. The only specifics given, however, are with respect to two alleged customers whom UIG alleges were solicited by Guerin. No specific allegations are provided as to alleged violations of the non-disclosure covenant.

UIG also makes a more general allegation that it has a list of unspecified accounts as to which, in its words, it is "highly likely that Guerin used customer information [and] solicited UIG customers" to transfer accounts to the Varney Agency. Complaint ¶ 33. Conclusory allegations that Guerin "used" customer information and/or trade secrets also appear in in paragraphs 35 and 46 of the complaint. However, to the extent that UIG equates any "use" by Guerin of its customer information with a "disclosure" of that information in violation of the non-disclosure covenant,[4] the court disagrees. "Disclosure" by its terms requires UIG to show that Guerin has provided UIG information or records to others at the Varney Agency or to other third parties, not that he "used" any information he may retain in his memory.[5]

Recognizing, however, that a complaint cannot be dismissed if there are any facts that a plaintiff may prove that would entitle the plaintiff to relief and that the plaintiff is entitled to any inferences that may be drawn from the complaint, the court concludes that UIG's complaint for violation of the non-disclosure covenant should not be dismissed for failure to state a claim. Although not appended to the complaint, UIG has submitted on its preliminary injunction motion a list of UIG customers who have transferred to the Varney Agency. Read in the light most

---

[4] See UIG's Objection to Motion to Dismiss dated April 12, 2019 at 4.

[5] Guerin cannot be expected to erase his memory. Moreover, since his non-solicitation covenant only lasts for five years, it would appear that under the Shareholder Agreement he would then be personally free to solicit former customers even if that would constitute a "use" of UIG information.

favorable to UIG, the complaint would allow an inference that Guerin either solicited those customers or disclosed information to other Varney employees to cause them to be solicited.

With respect to Count II, a violation of the Trade Secrets Act results from either "disclosure or use" of a trade secret, 10 M.R.S. § 1542(2)(B), by a person who had a duty to maintain its secrecy. UIG's trade secret allegations are thin, but the court concludes that the allegations that Guerin "used" UIG's customer information are sufficient to state a claim on Count II. However, it bears emphasis that on this claim UIG will have to prove not only that Guerin used customer information but that the information used constituted a trade secret as defined in 10 M.R.S. § 1542(4).[6]

Recognizing that Guerin's arguments have some force – because the complaint never specifies how Guerin has allegedly breached the non-disclosure covenant and also never specifies what information allegedly constitutes trade secrets – the court sees little purpose in dismissing the non-disclosure claim in Count I and the trade secrets claim in Count II with leave to replead when, based on UIG's opposition to the motion to dismiss, it is essentially preordained that UIG will then expressly allege that Guerin has disclosed UIG information to other Varney employees and that he has used customer information that UIG contends constitutes trade secrets.

With respect to Count III of the complaint – UIG's unjust enrichment claim – an unjust enrichment claim presupposes the absence of a contractual relationship. *York County v. Propertyinfo Corp.*, 2019 ME 12 ¶ 26, 200 A.3d 803. While UIG argues that it can plead in the alternative, there is no dispute here that Guerin and UIG entered into an express contract, which

---

[6] While it is understandable that businesses want to protect their customer relationships, it does not follow that customer information necessarily meets the definition of a trade secret in § 1542(4). In paragraph 14(b) of the restrictive covenants, the parties agreed that UIG's files and records were confidential and "in some respects" constituted trade secrets, leaving open the question of which records merited that designation.

UIG contends Guerin has breached and with which Guerin contends he has complied. Accordingly, Guerin's motion to dismiss is granted as to UIG's unjust enrichment claim.[7]

## Legal Standard – UIG's Preliminary Injunction Motion

In ruling on a preliminary injunction, the court must consider four factors: (1) whether the plaintiff will suffer irreparable injury in the absence of a preliminary injunction; (2) whether that injury outweighs any harm which granting injunctive relief would inflict on the defendant, (3) whether plaintiff has demonstrated a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and (4) whether the public interest would be adversely affected by granting the injunction. *Bangor Historic Track Inc. v. Department of Agriculture*, 2003 ME 140 ¶ 9, 837 A.2d 129; *Ingraham v. University of Maine*, 441 A.2d 691, 693 (Me. 1982).

Of those four factors, the third is most important. The Law Court has described likelihood of success as the "sine qua non" of the four-part standard for entry of a preliminary injunction. *National Organization for Marriage v. Commission on Governmental Ethics and Election Practices*, 2015 ME 103 ¶ 28, 121 A.3d 792. In addition, while a plaintiff's claims are judged solely on the basis of the allegations made purposes of a motion to dismiss, a plaintiff has to offer evidence to support the likelihood of success on a motion for a preliminary injunction.

In this case UIG has not demonstrated that it has either a likelihood of success or even a substantial possibility of success on the merits on its motion for a preliminary injunction. The motion was originally based on two specific instances of alleged non-solicitation. However, UIG has subsequently acknowledged that one of those alleged instances did not involve a person who

---

[7] In his opposition to UIG's motion for a preliminary injunction, Guerin has not raised any claim that the Redemption and Stock Purchase Agreement, which subjected him to the restrictive covenants in the Second Amended Shareholders Agreement, is invalid. If Guerin were to raise such a claim, the court would consider whether that would allow UIG to resurrect its unjust enrichment claim.

6

was a customer of UIG during the last two years of Guerin's UIG. Accordingly, even if that person had been solicited by Guerin, that person is not covered by the restrictive covenant in paragraph 14(c).

In addition, Guerin has submitted affidavits by both that person and by the other person specifically alleged to have been solicited by Guerin, and both state that they were not solicited by Guerin but instead chose – on their own initiative – to contact him. The only other evidence offered by UIG is essentially supposition – that some customers have transferred their accounts to the Varney Agency and that UIG "strongly suspects" or believes that it is "highly likely" this resulted from solicitation by Guerin. Undated Miller Affidavit filed March 14, 2019 ¶¶ 31, 32, 35.[8] Given that Guerin has rebutted the only specific instances of alleged solicitation relied on by UIG, the court does not find UIG's "suspicions" demonstrate a likelihood of success on this issue.

This is particularly true given that Guerin has offered sworn denials that he has violated the non-solicitation covenant and has provided documentary evidence of his efforts to comply with that covenant. On the issue of whether Guerin has violated the non-disclosure covenant, UIG has offered no evidence other than Miller's suspicion that Guerin used UIG customer information. Undated Miller Affidavit ¶ 32. Guerin has denied that as well and has provided a memo in which he informed Varney employees that he cannot share confidential customer information obtained

___

[8] In paragraph ¶ 32 of his undated affidavit Miller states that "we either know or strongly suspect" that certain listed accounts transferred to the Varney Agency due to solicitation by Guerin or his use of UIG customer information. Miller does not provide any information that would support personal knowledge on his part, and his contention therefore must be considered to be based on his alternative theory of suspicion. Suspicion is not a substitute for evidence, particularly since – after Guerin rebutted the only specific instances of solicitation alleged by UIG – Miller filed a second affidavit that did not offer any further specific instances of alleged solicitation. That affidavit offers some details with respect to the Budget Document Technology account, but those are not inconsistent with Ouellette's sworn statement that he contacted Guerin on his own initiative, rather than in response to solicitation by Guerin.

7

during his years at UIG. Finally, on the preliminary injunction motion, UIG has offered no evidence in support of a claim that Guerin has violated the Trade Secrets Act.

In sum, the court does not find that UIG has established a likelihood of success on the merits or that, on the basis of the evidence submitted, an evidentiary hearing is called for.

The entry shall be:

1. Defendant's motion to dismiss is denied as to Counts I and II of the complaint but is granted as to Count III of the complaint.

2. Plaintiff's motion for a preliminary injunction is denied.

3. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: July 12, 2019

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 07/17/19

mc/

**Plaintiff-Frank Bemis, Esq and Joanne Simonelli, Esq. Defendant Nolan Reichl, Esq.**

8