STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. RE-11-054

VACATION HOTDEAL                    /
COMPANIES, INC., et al.,

            Plaintiffs
                                                  ORDER ON PLAINTIFFS'
            v.                                    MOTION FOR PRELIMINARY
                                                  INJUNCTION
EASY TIMESHARE
RESALES, LLC, et al.,


            Defendants

        Before the court is a motion for preliminary injunction pursuant to M.R. Civ. P.

65.   Plaintiffs Vacation Hotdeal Companies, Inc. and SellMyTimeShareNow, LLC

(SMTN) request the court enjoin defendant Easy Timeshare Resales, LLC[1] (ETR) from:

(1) employing or having any other relationship with defendant Laing; (2) soliciting any

business from any SMTN customer based on information obtained directly or indirectly

from defendant Laing; (3) soliciting or hiring any current or former employees of

plaintiff SMTN based on information or contacts provided by defendant Laing; and (4)

using or disclosing plaintiff SMTN's Confidential Information, including, but not

limited to lead information obtained or derived from plaintiff SMTN.  (Ver. Compl. at

17.)  Plaintiff SMTN further requests that the court order defendant ETR to destroy any

and all SMTN documents after providing plaintiff SMTN with forensic images of such

documents.[2]  (Id.)

---

[1] Consideration of the plaintiffs' motion for a preliminary injunction against defendant Dennis
Laing was deferred by plaintiffs.

[2] Attached to a letter dated February 24, 2011 from Attorney Shepherd, plaintiff SMTN provided
defendant ETR with a proposed "agreed-to" order on its motion for preliminary injunction.
(Pls.' Rep. Mot. for Prelim. Inj., Ex. B.)  The relief in the proposed order is similar to the relevant
relief requested in the plaintiffs' verified complaint.  (See id.)

Defendant ETR objects to any preliminary injunction, but if one were to issue, requests that the injunction be limited as follows:

1. Defendant ETR will not engage in any employment activity or any other ownership arrangement with defendant Laing for the duration of defendant Laing's non-compete agreement.
2. Defendant ETR will not knowingly solicit any business from any customer based on lead information allegedly obtained by defendant Laing from the plaintiffs and transferred to defendant ETR.
3. Defendant ETR will not be prevented in any way from soliciting business from any customer whose information it has obtained from independent sources regardless of whether these customers' data were at any time in the possession of the plaintiffs.
4. To the extent defendant ETR finds in its office documents belonging to the plaintiffs, defendant ETR shall return those documents to the plaintiffs.[3]

(Def. ETR's Resp. to Pls.' Reply Mot. for Prelim. Inj. at 6.)

BACKGROUND

According to the verified complaint, plaintiff SMTN, a wholly-owned subsidiary of plaintiff Vacation Hotdeal Companies, Inc., is a real estate time-share listings, sales and rentals company, which operates a timeshare website. (Ver. Compl. ¶¶ 4, 8.) In or about 2009, defendant Laing created defendant ETR as a direct competitor to plaintiff SMTN, where defendant Laing had worked from March to October 2007. (Ver. Compl. ¶¶ 12, 14-15.) In June 2010, defendant Laing sought reemployment with plaintiff SMTN, asserting that defendant ETR was no longer an active company and that he was no longer involved with defendant ETR. (Ver. Compl. ¶¶ 16-17.) Based on his representations, plaintiff SMTN rehired defendant Laing and made his employment

---

[3] Defendant ETR does not admit that it knowingly employed Mr. Laing in violation of an alleged agreement between defendant Laing and the plaintiffs. (Def. ETR's Resp. to Pls.' Reply Mot. for Prelim. Inj. at 6.) Defendant ETR does not admit that it has ever used lead information allegedly obtained by defendant Laing from the plaintiffs or that defendant Laing ever furnished defendant ETR such lead information. (Id.) Defendant ETR has maintained that, to its knowledge, it has no documents in their possession, custody, or control that belong to the plaintiffs. (Id.)

2

contingent upon his entering a non-disclosure, non-competition and non-solicitation agreement (the "Agreement"). (Ver. Compl. ¶¶ 18, 21-25; Ver. Compl., Ex. A.) Defendant ETR never signed or was a party to the Agreement. (Ver. Compl., Ex. A.)

Plaintiff SMTN alleges that defendant Laing remained involved with defendant ETR after he was rehired at plaintiff SMTN. (Ver. Compl. ¶ 26.) Plaintiff SMTN believes that defendant Laing provided leads he took from plaintiff SMTN to defendant ETR. (Ver. Compl. ¶ 28.) Moreover, within days of his rehire at plaintiff SMTN, plaintiff SMTN alleges that defendant Laing began removing confidential customer leads from plaintiff SMTN's computer system and provided those leads to defendant ETR. (Ver. Compl. ¶¶ 27-28.) In addition, plaintiff SMTN alleges that defendant ETR had a number of SMTN leads in its database, at least one of which had been assigned to defendant Laing. (Ver. Compl. ¶ 29.) Plaintiff SMTN alleges that at least one SMTN lead had been contacted by defendant ETR; one customer signed with defendant ETR but had been led to believe he was dealing with plaintiff SMTN. (Id.)

In September 2010, plaintiff SMTN confronted defendant Laing about his connections with defendant ETR and later terminated his employment. (Ver. Compl. ¶ 30.) Since September 2010, plaintiff SMTN alleges that defendant ETR has continued to rely upon the confidential customer lead information that defendant Laing allegedly took from plaintiff SMTN. (Ver. Compl. ¶ 32.) Plaintiff SMTN further alleges that defendants ETR and Laing are suggesting incorrectly to plaintiff SMTN's customers that defendant ETR is affiliated with plaintiff SMTN and the customers continued to believe they were dealing with plaintiff SMTN. (Ver. Compl. ¶ 33.)

In its verified complaint, plaintiff SMTN alleges causes of action for: (1) violation of the Maine Uniform Deceptive Trade Practices Act against defendants ETR and Laing; (2) violation of the Maine Uniform Trade Secrets Act against defendants ETR and Laing;

3

(3) tortious interference with prospective economic advantage against defendants ETR and Laing; (4) tortious interference with plaintiff SMTN's contract with SMTN employees against defendant ETR; (5) breach of contract against defendant Laing; (6) breach of fiduciary duty against defendant Laing; (7) fraudulent misrepresentation against defendant Laing; and (8) unjust enrichment against defendants ETR and Laing. Plaintiff SMTN requests a preliminary and permanent injunction against defendants ETR and Laing along with other relief.

Defendant ETR asserts that it was not aware of the Agreement between plaintiff SMTN and defendant Laing. (Def. ETR's Opp. Mem. at 2-3.) Now that defendant ETR is aware of the Agreement, defendant ETR states that it no longer employs defendant Laing as a sales representative and he has voluntarily agreed to withdraw as a shareholder of defendant ETR for as long as the Agreement remains in effect. (Def. ETR's Opp. Mem. at 3; Dall Aff. at ¶¶ 24-25.) Further, ETR asserts that it has never knowingly used any leads that belong to plaintiff SMTN. (Def. ETR's Op. Mem. at 3; Dall Aff. ¶ 27.)

If an order issues, the parties appear to agree that defendant ETR will be enjoined from continuing its employment relationship with defendant Laing and that he will no longer have ownership interest in ETR while the Agreement remains in effect. (Pls.' Rep. Mot. for Prelim. Inj., Ex. B; Dall Aff. ¶¶ 24-25.) The parties also appear to agree that defendant ETR will not knowingly solicit any business from any customer based on lead information allegedly obtained by defendant Laing from plaintiff SMTN and transferred to defendant ETR. (Pls.' Rep. Mot. for Prelim. Inj., Ex. B; Dall Aff. ¶ 27.) Defendant ETR argues that an order enjoining defendant ETR from soliciting or hiring any SMTN employee is overly broad. (See, e.g., Def. ETR's Resp. to Pls.' Rep. Mot. for Prelim. Inj. at 7.)

4

DISCUSSION

I.    Standard of Review

In order to succeed on a motion for a preliminary injunction, a moving party has the burden of demonstrating

    1)    that plaintiff will suffer irreparable injury if the injunction is not granted,

    2)    that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant,

    3)    that plaintiff has established a likelihood of success on the merits (at most, a probability; at least, a substantial possibility),

    4)    that the public interest will not be adversely affected by granting the injunction.

Ingraham v. Univ. of Maine, 441 A.2d 691, 693 (Me. 1982). These four criteria, however, "are not to be applied woodenly or in isolation from each other; rather, the court of equity should weigh all of these factors together in determining whether injunctive relief is proper in the specific circumstances of each case." Dep't of Envtl. Prot. v. Emerson, 563 A.2d 762, 768 (Me. 1989). For example, if the evidence of success on the merits is clear, the showing of irreparable injury may be subject to less stringent requirements. Id. (citation omitted).

II.    Irreparable Injury

"An injury for which there is no adequate remedy at law is an irreparable injury." Bar Harbor Banking & Trust Co. v. Alexander, 411 A.2d 74, 79 (Me. 1980). Plaintiff SMTN alleges that further unauthorized use or disclosure of valuable confidential or trade secret information constitutes irreparable harm to its goodwill and usurps its corporate opportunities. (Pls.' Mem. Prelim. Inj. at 4.) The loss of a business's goodwill and relationships may constitute irreparable injury if the damage is not too speculative. Compare XWave New Eng. Corp. v. Ziegenfus, 2007 Me. Super. LEXIS 102, *9-10 (Me. Super. Ct., May 18, 2007) with Coast to Coast Engineering Svcs. v.

5

Stein, 2006 Me. Super. LEXIS 264, *6-8 (Me. Super. Ct., Dec. 12, 2006). The injury to plaintiff SMTN's business opportunities and goodwill is not too speculative and plaintiff SMTN has established irreparable injury if this injunction is not granted and defendant ETR were allowed to continue to employ defendant Laing. (See Ver. Compl. ¶¶ 12-13, 21, 23, 31-33; Brasier Aff. ¶¶ 4-11; Cresta Aff. ¶¶ 10-15.)

Any irreparable injury that could result if defendant ETR is not prohibited from soliciting or hiring SMTN employees for the duration of defendant Laing's agreement is speculative. "Hypothetical injury, even if significant, cannot be a basis for awarding preliminary injunctive relief." Coast to Coast Engineering Svcs., 2006 Me. Super. LEXIS 264 at *8. Finally, plaintiff SMTN will not suffer irreparable injury if defendant ETR simply returns plaintiff SMTN's customer leads that are allegedly in defendant ETR's possession instead of taking a forensic image of such leads and destroying them.

III.    Balancing of Harms

The harm to defendant ETR if this injunction issues does not outweigh the harm to plaintiff SMTN if defendant ETR continues to employ defendant Laing, to allow him to have an ownership interest in defendant ETR in violation of the Agreement, and to use plaintiff SMTN's information. Any harm to plaintiff SMTN if defendant ETR solicits or hires SMTN employees is speculative. Because plaintiff SMTN's leads can be accessed only in SMTN computers in SMTN offices, this argument assumes that SMTN employees will download SMTN information and remove it from the SMTN office, conduct plaintiff SMTN alleges defendant Laing engaged in.

IV.    Likelihood of Success on the Merits

A "likelihood of success on the merits" is "at most, a probability; at least, a substantial possibility." Bangor Historic Track, Inc. v. Dep't of Agric., 2003 ME 140, ¶ 9, 837 A.2d 129, 132. Plaintiff SMTN has established that there is at least a substantial

6

possibility that it will succeed on the merits of its claims against defendant ETR. There is at least a substantial possibility that defendant ETR acted in violation of the Maine Uniform Deceptive Trade Practices Act when it led plaintiff SMTN customers to believe that defendant ETR is affiliated with plaintiff SMTN. 10 M.R.S. §§ 1212(1)(A), (C), & (L) (2011).[4] Plaintiff SMTN alleges that at least one customer was led to believe that defendant ETR was affiliated with plaintiff SMTN. (Ver. Compl. ¶ 41; Pl.'s Mot. for Prelim. Inj., Ex. A.)

Plaintiff SMTN has established that there is at least a substantial possibility that defendant ETR misappropriated trade secrets. Native Maine Produce & Specialty Foods, LLC v. Berrill, 2008 Me. Super. LEXIS 46, *4 (Me. Super. Ct. Feb. 11, 2008) (customer lists may be trade secrets in certain limited circumstances); see 10 M.R.S. § 1542(4)(A) & (B) (2011); 10 M.R.S. § 1542(2)(B)(2)(iii) (2011) ("Misappropriation" is defined as "[d]isclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was" derived from a person who owed a duty to maintain the secrecy). Defendant Laing had a duty to keep plaintiff SMTN's customer leads a secret pursuant to the Agreement. Plaintiff SMTN sent a cease and desist letter to representatives of defendant ETR and to defendant Laing. (Ver. Compl.

---

[4] Title 10 M.R.S. sections 1212(1)(A), (C), and (L) state:

> A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he . . . [p]asses off goods or services as those of another; . . . [c]auses likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another; [or] [e]ngages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

10 M.R.S. §§ 1212(1)(A), (C), & (L) (2011).

¶ 35 & Ex. D.[5]) Plaintiff SMTN alleges that defendant ETR used SMTN customer leads, which are identified as SMTN on the paper leads. (Ver. Compl. ¶¶ 50-53; Brasier Aff. ¶ 9.)

V.     Public Interest

Finally, any injunction will not adversely affect the public interest. Enforcement of valid non-compete contracts is in the public's interest. XWave, 2007 Me. Super. LEXIS 102, at * 11 (Me. Super. Ct. May 18, 2007).

The entry is

> The Plaintiffs' Motion for Preliminary Injunction is GRANTED. Defendant ETR is enjoined from (1) engaging in any employment activity or any other ownership arrangement with Defendant Laing for the duration of Defendant Laing's non-compete agreement; (2) knowingly soliciting any business from any customer based on lead information obtained by Defendant Laing from Plaintiff SMTN and transferred to Defendant ETR; and (3) using or disclosing Plaintiff SMTN's confidential information, including but not limited to Plaintiff SMTN lead information removed from Plaintiff SMTN worksite by Defendant Laing and any information in Defendant ETR's databases derived from Plaintiff SMTN's customer lead information.
>
> Defendant ETR will return any document or information to Plaintiff SMTN that Defendant ETR has in its possession or custody or under its control, including but not limited to Plaintiff SMTN's lead information removed from Plaintiff SMTN worksite by Defendant Laing and any information in Defendant ETR's databases derived from Plaintiff SMTN's customer lead information.

Date: March 10, 2011

Nancy Mills
Justice, Superior Court

STATE OF MAINE
Cumberland, ss, Clerk's Office

RECEIVED

---

[5] The letter was addressed to defendant Laing and copies to Robert Dahl and Jason Tremblay. (Ver. Compl., Ex. D.) Mr. Dall denies receiving the letter. (Dall Aff. ¶ 2.) Defendant Laing does not address the issue. (Laing Aff.) The record has no information regarding CEO Tremblay.

8

< OF COURTS
ıerland County
ı Street, Ground Floor
ınd, ME 04101


JOHN LAMBERT ESQ          𝒫
LAMBERT COFFIN
PO BOX 15215
PORTLAND ME 04112


ЗK OF COURTS
nberland County
ıry Street, Ground Floor
:land, ME 04101


JUDY POTTER ESQ          𝒟
356 SPURWINK AVE
CAPE ELIZABETH ME 04107