STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. RE-20-92

ROTH ROGERS REALTY, LLC,

        Plaintiff

v.                                                ORDER ON MOTION FOR
                                                  TEMPORARY RESTRAINING ORDER
ROBERT A. GASTALDO and ELVIRA
H. GASTALDO,

        Defendants

The matter before the court is a motion for a temporary restraining order (TRO) by

plaintiff Roth Rogers Realty ("RRR") enjoining defendants Robert A Gastaldo and Elvira H.

Gastaldo ("The Gastaldos") from beginning construction of their home on the property

designated Lot 14 of the Stone Ridge Farm subdivision. For the following reasons, the motion is

denied.

Factual Background

This dispute primarily concerns a disagreement over the Gastalados' building plans on a

property they are purchasing from RRR. RRR is the Declarant for a subdivision known as Stone

Ridge Farm. (Opp. at 2.) The property at issue is designated as Lot 14 within that subdivision.

(Mot. at 2.) The subdivision is subject to a Declaration which imposes numerous restrictions on

improvements to be made to the lot, most importantly setbacks on the front, sides and back of the

lot. *Id.* The Declaration also imposes "no-cut zones" which prevent the removal of trees and

vegetation within twenty-five feet of a boundary line of the Lot without prior approval. *Id.* All

improvements to the lot must be pre-approved by RRR. *Id.*

1

On March 18, 2020, the parties entered into a contract for the purchase and sale of the lot. (Opp. at 5.) Prior to closing on the purchase of the lot, the Gastaldos prepared construction design and site plans for the home they plan to construct on the lot. *Id.* The Gastaldos submitted these plans to RRR for approval, pursuant to the provision in the Declaration which requires them to do so. *Id.* These plans were drawn to scale and had dashed setback lines which marked off the setbacks required by the Town of Falmouth. (Def.'s Ex. E.)

On May 12, 2020, RRR executed an addendum to the purchase and sale agreement which approved the Gastaldos' plans. (Opp. at 5.) RRR never requested additional clarification of the plans. (Opp. at 7.) The Gastaldos subsequently made changes to their designs and submitted updated plans for RRR's approval. *Id.* RRR executed a third addendum to the purchase and sale agreement approving these plans on June 25, 2020. *Id.*

The parties closed on the purchase of the lot on July 24, 2020. Now the Gastaldos wish to move forward with the construction of their home, but RRR contends that because their plans violate the setbacks in the Declaration they may not do so and brought suit to enjoin construction. Further, RRR seeks a TRO from this court to enjoin the Gastaldos from beginning construction while this lawsuit is pending.

Procedural Background

RRR filed its complaint and motion for a TRO with the court on November 10, 2020. The parties agreed by Consent Order dated November 13, 2020, that the Gastaldos would not proceed with construction until the motion was decided. The Gastaldos responded to the motion on November 23, 2020, submitting an answer and counterclaim on the same day. RRR replied on December 2, 2020.

2

Standard

A party seeking injunctive relief by a temporary restraining order or a preliminary injunction has the burden of demonstrating to the court that four criteria are met. The moving party must demonstrate that (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and (4) the public interest will not be adversely affected by granting the injunction. *Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶9. Failure to demonstrate that any one of these criteria are met requires that injunctive relief be denied. *Id.*, ¶ 10. However, these four criteria "..are not to be applied woodenly or in isolation from each other; rather, the court of equity should weigh all of the factors together in determining whether injunctive relief is proper in the specific circumstances of each case." *Department of Environmental Protection v. Emerson*, 563 A.2d 762, 768 (Me. 1989).

Discussion

The substance of the complaint is that RRR seeks to prevent the Gastaldos from moving forward with the construction of their home, which RRR claims is in violation of the covenants applicable to all of the lots in the subdivision. To determine whether a TRO is warranted, the court must first examine whether RRR is likely to succeed on the merits of this claim.

The first main controversy on this point concerns whether the setback requirements in the Declaration were ambiguous. The Gastaldos contend that they are, in virtue of the fact that the initial subdivision plan RRR filed indicated that there would be a "Front Setback" of 25 feet, a

3

"Side Setback" of 20 feet and a "Rear Setback" of 40 feet. (Def.'s Ex. A at n.6.) The Declaration, in Section 7.7(d), provides for setbacks for front, side, and rear setbacks of 75, 50 and 50 feet, respectively. (Def.'s Ex. B.) The Gastaldos contend that this generates an ambiguity because the Declaration also states in Section 7.9(b) that "all structures must be located within the Building Envelopes as depicted on the Subdivision Plan," which has different setbacks than the declaration itself. *Id.*

There is no contradiction here. The subdivision plan refers to the Town of Falmouth's Code's setbacks, the Declaration sets setbacks of its own. The Declaration was also filed after the subdivision plan, further removing any potential source of confusion. Clearly the intent was to have the more restrictive setbacks be the binding ones.

The second point of controversy is more complex. It is undisputed that pursuant to the Declaration the Gastaldos were required to submit building plans to RRR for approval before they began construction. It is similarly undisputed that they did submit such plans and amended them three times, and that each of these plans were approved by RRR. The parties disagree, however, as to the significance of these approvals. On the one hand, RRR contends that these plans did not provide any notice that they violated the setbacks in the Declaration, and, in the alternative, that the Declaration does not leave RRR with the authority to waive those setbacks via an approval. On the other hand, the Gastaldos argue that RRR effectively waived any right it had to enforce the setbacks in the Declaration when it approved their plans which violated them.

RRR's contention that it had no authority to waive these setbacks is incorrect. The Declaration requires anyone seeking to make improvements to the lot to seek approval from RRR before doing so. (Def.'s Ex. B § 7.1.) This section also contains a brief summary of RRR's responsibilities in the approval process, including a responsibility to "ascertain whether the

4

architecture conforms to the design guidelines set forth herein." *Id.* The following section elaborates more on this responsibility, saying that RRR or its designated agent shall use its "best judgment to see that all improvements, construction, landscaping and alterations on the properties approved by Declarant conform and harmonize with the Design Guidelines." *Id.* § 7.2. This language strongly indicates that RRR has more discretion than it claims. At the very least, unless RRR is claiming it failed to live up to its own responsibilities, approval of a plan reflects RRR's belief that the plan meets the guidelines. As the Gastaldos note, many of the other homes in the subdivision would violate the setbacks in the Declaration as well. (Def.'s Ex. H.) From this combination of practice and language, the court must conclude that RRR may indeed retain the ability to waive the setbacks in the Declaration when it approves a plan.

The question, then, is what exactly RRR approved. The parties' filings refer to four plans, the initially submitted diagrams and the three subsequent addendums. It is then of primary importance that the court review the plan that was finally approved to see if RRR is correct to claim that these plans gave no indication of the Gastaldos' intent to build outside of the window allowed by the setbacks. This, however, presents a problem. The final addendum says it is approving "the attached final building design and site plans dated 6/18/20." (Def.'s Ex. F.) However, there are no plans in the record that bear this date. The plan diagrams that the Gastaldos represent were attached to this proposal have the date "5/15/20" on them, but the court is unsure what to make of this. (Def.'s Ex. G.)

If the court were to assume that the diagrams from the Gastaldos' Exhibit G are in fact the site plans referenced in the third addendum, RRR's claim that they had no knowledge that the plans violated the setbacks in the Declaration would have no merit. The diagrams are to scale and are clearly marked with distances, meaning a careful inspection would reveal the setback

5

violations. This would imply that the Gastaldos, not RRR, have a likelihood of success on the merits. However, given that the court is unclear as to the status of this Exhibit at this time, all the court can conclude is that it impossible to say on the record produced with this motion that RRR is likely to succeed on the merits, and this factor therefore weighs against granting the TRO.

One factor is not dispositive in a decision whether to grant a TRO, but none of the other factors militate towards granting one. This is a purely private dispute, so public policy does not favor either position. As far as the balance of harms is concerned, while the court is not unsympathetic to RRR's point that mature trees can be difficult to replace, if the Gastaldos are ultimately in the wrong they will bear the cost of any necessary replanting work or of their home not conforming with the restrictions. Furthermore, not allowing them to pursue construction on their home will delay the completion of the project, incurring additional costs. Due to the difficulties anticipating when a civil trial on this case might even be held in light of the resurging COVID-19 pandemic, there is no way for the court to be certain how long this case will be pending. Thus, the balance of harms falls strongly in favor of the Gastaldos. In light of all of these factors, the motion will be denied.[1]

The entry is

> Plaintiff Roth Rogers Realty, LLC's Motion for a Temporary Restraining Order is DENIED.
>
> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: Dec. 15 , 2020

Harold Stewart, II
Justice, Superior Court

---

[1] Although the motion is denied, the possibility remains that RRR's claims may be proven at trial, and so both parties remain with some risk and uncertainty. As this project is in its infancy, the parties would benefit by resolving this matter now prior to significant construction being completed.

6