STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-20-546


STEPHEN D. BITHER, et al.,

          Plaintiffs

     v.                                           ORDER ON OUTSTANDING
                                                  MOTIONS
WOODFORDS CLUB,

          Defendant

There are five motions outstanding in this matter. These five, in the order they are

addressed, are as follows: (1) Applicant Richard Roe's Motion to Intervene; (2) Applicant

Richard Roe's Motion to Impound; (3) Defendant Woodfords Club's Motion to Impound and

Seal; (4) Plaintiffs Stephen D. Bither, Naomi Menikoff, Don Bouwens and Carol Chipman's

Motion for Temporary Restraining Order; and (5) Plaintiffs' Motion for Emergency Hearing.

Factual Background

Defendant, Woodfords Club, is a private social club "with a mission of serving the social

and cultural interests of its members." (Mot. TRO at 1.) The Club is housed in a building located

at 179 Woodford Street in Portland, Maine. *Id.* Plaintiffs are all members of the Club and have

been for some time. *Id.*

According to the club's bylaws, two types of members' meetings must be held regularly.

The first must be held annually on the second Friday of April. (Pl.'s Ex. A at 8.) The second are

regular monthly meetings which are held on the second Friday of each month between the

months of October and April. *Id.* Monthly meetings during the other months are conducted at the

discretion of the Board. *Id.* In addition to these regular meetings, the bylaws provide that a

special meeting of the members may be called by the President of the Club, the Board or upon

1

application of 10 or more members in writing. *Id.* On any of these conditions, the special meeting must be called within 5 days, with 72 hours' notice to the membership delivered via electronic or regular mail. *Id.*

For context, the court must go back to March of 2020, when an incident occurred that would eventually build into this lawsuit. On March 13, 2020, Russ Glidden, Woodfords' then President, allegedly groped a kitchen assistant and made inappropriate comments to her at a Club function. (Mot. TRO at 2.) This incident was observed by the Club's steward, Steven Trott, who reported it to Plaintiff Bouwens, the Club Secretary at the time. *Id.* Bouwens consulted with an employment attorney, who suggested hiring a professional investigator from a Human Resources firm. *Id.* Though the exact circumstances of this contract are in some dispute, either Bouwens or the Board hired Betsy Oulton of HR Maine Consulting to conduct the investigation.[1] *Id.* at 3. Oulton conducted her investigation and concluded that the allegations were substantiated. *Id.*

The matter was brought up at the next Board meeting, on March 27, 2020. *Id.* The Board was split on how to proceed. Six of the Board members were in favor of removing Glidden from the Board and his position as President, while the remaining five were not. *Id.* Club bylaws require a 2/3 majority for the removal of an officer or Board member. *Id.* Unable to remove Glidden directly, the six members in favor of his departure passed a resolution asking Glidden to voluntarily resign. *Id.* Glidden refused. *Id.*

In the following months, factions formed on the Board and in the general membership of Club. One faction favored Glidden's removal and the other faction was allegedly more

---

[1] It is not clear what relevance, if any, the circumstances of Oulton's hiring have to this lawsuit. The parties disagree whether she was hired by Bouwens personally or by the Board as a whole, but given that the underlying relief requested is only to require the Board to hold a membership meeting, the court does not see how this dispute would affect the litigation at this stage.

concerned with the manner in which the investigation was conducted. *Id.* At the April 29, 2020 meeting of the Board, the Board members opposed to Glidden became so frustrated with the other members of the Board that they left the meeting in protest and resigned their positions. *Id.* at 4. Unsurprisingly, they were subsequently replaced by Club members they allege were aligned with Glidden and the remaining Board members. *Id.*

The months between then and the initiation of this lawsuit were filled with all varieties of parliamentarian maneuvering, with the two opposing factions attempting to utilize the Club's bylaws to pursue their objectives. The specifics of these maneuvers are not relevant to the matter until the anti-Glidden faction attempted to call a special membership meeting pursuant to the provision allowing 10 members to call such a meeting by request. Their intent with this meeting was, among other things, to replace the current members of the Board. *Id.* at 7-8. The Board took the position that the Club's bylaws did not allow remote meetings as requested in light of COVID-19 safety precautions. *Id.* at 8. These members then submitted proposed new bylaws that would allow for such a meeting. *Id.*

This meeting has not materialized, despite negotiations between the two groups. At one point, the Board promised to hold a membership meeting on November 13, 2020, apparently to resolve these issues. *Id.* at 9. This meeting was later canceled. *Id.* After the date passed, the Board began taking actions to strip members of their voting rights for failure to pay dues. *Id.* at 10. On or around November 13, 2020, the Board began sending notices to Club members who were not current on their dues, warning them that failure to pay within 15 days would result in their names being posted and that failure to pay within 30 days of that posting would result in termination of their membership pursuant to the Club's bylaws. *Id.* at 9.

3

On December 11, 2020, the Board adopted a new resolution deactivating the memberships of 38 members who delayed paying their dues. *Id.* at 11. Plaintiffs allege this was premature under the bylaws, which require at least 45 days to elapse before a membership can be deactivated for failure to pay dues. The plaintiffs then filed this suit pursuant to 14 M.R.S. § 5951 *et seq.*, requesting the court to order the Board to call the special members' meeting they seek and restore the voting status of the members disenfranchised by the December 11 resolution.

Procedural Background

Plaintiffs initially filed this action on December 21, 2020. On the same day, they filed a Motion for a Temporary Restraining Order ("TRO") and a Motion for an Emergency Hearing. Richard Roe, an assumed name, then sought to intervene in the action by motion of December 28, 2020. He filed a Motion to Impound all documents related to this case on the same day. Woodfords answered on January 11, 2021 and asserted a counterclaim of defamation against the Plaintiffs. Woodfords also filed its own Motion to Impound and Seal on the same day. Plaintiffs answered the counterclaim on January 19, 2021. All of these motions are still pending.

Roe's Motion to Intervene

The court will first address Roe's motion to intervene in this matter. Roe argues that he is entitled to intervene to protect his reputation, as his real name appears in several documents connected to the sexual harassment allegations that began this lengthy conflict between the parties. He argues that this disclosure violates Club rules and the due process and confidentiality provisions of Robert's Rules of Order. Leaving aside the fact that his motion cites no evidence for these claims, the court does not think they provide a basis for intervention.

4

M.R. Civ. P. 24 sets out the rules for intervention. In some cases, a party may be entitled to intervene as a matter of right. These are cases "(1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the application is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." M.R. Civ. P. 24(a). Roe has no statutory right, nor would an adjudication of plaintiffs' claims impair his ability to protect his interests. Roe does not claim an interest in the subject matter of this lawsuit, but in the disclosure of his name in certain documents. Even were the court to construe this as the "property or transaction" that is the subject of this action, the club has enough incentive to enforce its own rules to the extent the law allows, as it has already demonstrated by filing its own motion to seal in this matter.

M.R. Civ. P. 24(b) provides that the court may allow an applicant to intervene in a case where that applicant's "claim or defense and the main action have a question of law or fact in common," considering "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The court declines. Roe has not even raised a claim or defense here, he merely wishes permission to intervene so that he may file a motion to seal documents he argues are damaging to his representation. Even if the court found there was a question of law or fact in common with the original claim, the current parties are sufficiently well situated to litigate the issues that Roe's intervention would only invite unnecessary delay and consume judicial resources. His motion to intervene is denied.

As Roe's motion to intervene is denied, his subsequent motion to impound is moot.

5

<u>Woodfords Club's Motion to Impound and Seal</u>

Woodfords Club has also filed its own motion to impound and seal. The Club wishes to seal all portions of the record which contain board meeting minutes, financial information and attorney client communications. It identifies one document in particular, Exhibit 5 to Menikoff's Affidavit, as being subject to attorney client privilege. Attorney-Client privilege applies to this exhibit, which is a legal memorandum prepared by an attorney advising the board on matters related to the sexual harassment allegations that precipitated the current dispute. With respect to this exhibit alone, the motion will be granted.

As for the rest of the record, the Club provides no compelling rationale to seal the record at this stage. First and foremost, despite their general assertions that the Club "deems this information to be confidential" and that the meeting minutes they wish to seal "are well within the type of information typically deemed confidential," they provide no authority or citation of any kind to support these assertions. The bylaws in the record make no provisions for the confidentiality of any of these documents. Simply put, they have asserted that the documents are confidential and asked the court to seal them on that basis alone.

Even if the bylaws did provide some basis for Woodfords' claim that these documents are confidential under their rules, the court would not be inclined to grant the motion. "The courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Cary v. Me. Bd. of Overseers of the Bar*, 2018 ME 73, ¶ 11, 186 A.3d 848. The court agrees with another recent Superior Court decision, which stated that it "does not believe that it should make decisions on a secret record or a record from which material portions have been withheld from public access unless a party seeking confidentiality can demonstrate strong countervailing interests, such as the need to protect trade

secrets." *Concord Gen. Mut. Ins. Co. v. Grindel*, No. CV-18-426, 2020 Me. Super. LEXIS 79 at *2 (Mar. 4, 2020).

Here the court sees no reason it would seal sweeping portions of the record simply to protect the privacy of club members. While the court is sympathetic to the desire for privacy, the public's right of access to judicial records is more important. To the extent that Woodfords believes that other documents fall within the attorney-client privilege, it may move to seal those documents as it identifies them. The court declines, however, to conduct a formal review of every document submitted in support of the affidavits based solely on a generalized assertion that some of them might be privileged. Except as noted above, the motion will be denied.

Plaintiffs' Motions

This leaves the Plaintiffs' motions outstanding. Plaintiffs have requested an immediate emergency hearing and Temporary Restraining Order ("TRO") against Woodfords. Their proposed motion would require Woodfords to hold a special meeting of club membership within seven days of the order entering. They list a number of other requirements, but the substance of the proposed order is that a meeting be held remotely where a new version of the bylaws can be voted on and new Board members may be elected.

> To qualify for a TRO a party must demonstrate that:
>
> (1) it will suffer irreparable injury if the injunction is not granted;
> (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party;
> (3) it has a likelihood of success on the merits (at most a probability; at least, a substantial possibility); and
> (4) the public interest will not be adversely affected by granting the injunction

*Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 9, 837 A.2d 129. Plaintiffs acknowledge that they stand to suffer no irreparable pecuniary harm, but claim that they stand to lose a number of intangible benefits associated with the club, such as the right

7

to socialize and network with other members. This, they claim, is the irreparable harm they stand to face if the court does not order Woodfords to hold a special meeting of the members.[2]

The Court does not agree that these "intangible benefits" satisfy the first requirement for granting a TRO. First of all, the Plaintiffs have not shown that they stand to lose these benefits. The documents they have submitted certainly suggests a great deal of hostility between themselves and the current Board members, but none of these documents clearly show that they are on the verge of being ejected from club. Furthermore, such an ejection is an injury that the court could easily remedy via a later injunction, assuming it was found to be wrongful.

The case Plaintiffs cite in support of their claim that intangible benefits like this can constitute irreparable injury for the purposes of granting a TRO misses the mark by a wide margin. In *Elrod v. Burns*, the Supreme Court was deciding whether the loss of First Amendment rights of association, specifically the right to keep public employment without declaring allegiance to a particular political party, constituted an irreparable injury justifying the entry of a TRO. 427 U.S. 347, 373 (1976). Plaintiffs do not, and could not, claim that they face the loss of a constitutional right if the court does not order their private social club to conduct a special members meeting. The Court does not think that the harm in this case rises anywhere near that level.

In summary, the court fails to see what irreparable harm Plaintiffs are facing, especially one that could be remedied by ordering Woodfords to conduct the meeting they request. It may turn out that Plaintiffs are correct and such a meeting is required by the Club bylaws. The court does not reach Plaintiffs' likelihood of success on the merits today. However, the harm in this

---

[2] The court disregards the Plaintiffs' arguments as they relate to harms faced by other members or the club itself. These are not harms faced by the Plaintiffs themselves and are therefore irrelevant to the TRO analysis, except insofar as they may inform the public interest in the injunction, which the court does not reach in its analysis.

case is not so imminent or dire so as to merit an acceleration of the ordinary judicial process. An injunction would be premature. For the same reasons, the request for an emergency hearing will be denied.

The entry is

(1) Applicant Richard Roe's Motion to Intervene is DENIED;
(2) Applicant Richard Roe's Motion to Impound is MOOT;
(3) Defendant Woodfords Club's Motion to Impound and Seal is GRANTED as to Exhibit 5 to Naomi Menikoff's Affidavit and DENIED as to the rest;
(4) Plaintiffs' Motion for Temporary Restraining Order is DENIED; and
(5) Plaintiffs' Motion for Emergency Hearing is DENIED.

The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: _____, 2021

_____
Harold Stewart, II
Justice, Superior Court

Entered on the Docket: 2/17/2021

9